431 A.2d 1023

**COMMONWEALTH of Pennsylvania**

v.

**William Spencer JENKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1980.

Filed June 19, 1981.

Petition for Allowance of Appeal Denied Nov. 2, 1981.

Stephen R. LaCheen, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, WICKERSHAM and LIPEZ, JJ.

PRICE, Judge:

Following a nonjury trial, appellant, William Spencer Jenkins, was found guilty of two counts each of robbery,[1] conspiracy[2] and possession of an instrument of crime.[3] Following denial of post-verdict motions, he was sentenced to two terms of four to ten years imprisonment and one term

1. 18 Pa.C.S.A. § 3701.

2. 18 Pa.C.S.A. § 903.

3. 18 Pa.C.S.A. § 907.

of fifteen years probation, all to run concurrently. Appellant now claims that he is entitled to a new trial because certain inculpatory statements, allegedly obtained as a result of his illegal arrest, were impermissibly admitted into evidence at trial.[4] *See* U.S.Const. Amend. IV; Pa.Const. Art. 1, § 8; *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). For the reasons stated herein, we disagree and thus affirm the judgment of sentence.

The circumstances giving rise to appellant's arrest, as disclosed at the suppression hearing, are as follows. Acting pursuant to a warrant, Detective John Romano arrested Clifford Branch for his alleged participation in two robberies of a McDonalds restaurant located at Broad and Vine Streets in Philadelphia. At the time of his arrest, Branch gave a statement in which he admitted his involvement in the crimes and also implicated appellant as a co-felon. Specifically, Branch told the police that "Jinx" was a participant in the robberies and that Jinx "hung out" with Robert Moore, another co-defendant, between the 1400 and 1600 blocks of Susquehanna Avenue.

On the basis of this information, Detective Romano began to patrol the area identified by Branch as Jinx's "hangout." He questioned residents whether they knew an individual known as Jinx who was a friend of Robert Moore and who was often in that neighborhood. The detective subsequently received information concerning Jinx's whereabouts from a phone caller who had earlier informed Romano that he knew Moore and his friend, Jinx.[5] When Detective Romano arrived at the specified location, however, no one was there. The next night, the informant called again, stating that Jinx was at the corner of Carlisle Street and Susquehanna Ave-

---

**4.** Appellant first challenged the admissibility of the incriminating statements in a pre-trial suppression hearing. On June 1, 1978, appellant's motion to suppress was denied.

**5.** Although the phone caller's identity was known to the Commonwealth, the trial court refused to grant appellant's motion for disclosure.

nue [6] wearing a new brown cashmere coat. Detective Romano went to the corner identified by the caller and observed a group of males, all of whom were wearing fatigue-type jackets, with the exception of appellant, who was wearing a new-looking gray wool coat. The detective approached appellant, whose identity was unknown at this time, and asked, "Jinx?" Appellant replied "yes" and was thereupon placed under arrest. After he was given standard *Miranda* warnings, appellant gave police a statement admitting his complicity in the two McDonalds robberies. (N.T. 37–43).

In *Commonwealth v. Stokes*, 480 Pa. 38, 389 A.2d 74 (1978), our supreme court stated:

> The law is clear that a warrantless arrest is not lawful unless there is probable cause therefor .... Whether there is probable cause to arrest without a warrant depends on whether, at the moment a suspect is taken into custody, the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the person to be arrested has committed the offense.

*Id.*, 480 Pa. at 43–44, 389 A.2d at 76 (citations omitted). *See, e. g., Commonwealth v. Brooks*, 468 Pa. 547, 364 A.2d 652 (1976); *Commonwealth v. Patterson*, 266 Pa.Super. 167, 403 A.2d 596 (1979).

It is equally clear that an officer's reasonable belief in the probability that the person to be arrested has engaged in some criminal activity may be predicated upon uncorroborated hearsay. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). As has been frequently reiterated by our appellate courts, probable cause for a warrantless arrest "need not be grounded in the officer's direct, personal knowledge of the relevant facts and circumstances. It may, instead, rest solely on information supplied by another person where there is a 'substantial basis' for crediting that information." *Commonwealth v. Stokes*, 480

---

**6.** The intersection is between the 1400 and 1700 blocks of Susquehanna Avenue.

Pa. at 44, 389 A.2d at 76 (citations omitted). *See, e. g., Commonwealth v. Wilson*, 245 Pa.Super. 415, 369 A.2d 471 (1976); *Commonwealth v. Brown*, 228 Pa.Super. 158, 323 A.2d 104 (1974).

Appellant does not dispute these precepts, but rather, contends that the information given by Branch to Detective Romano was insufficient to show probable cause since it was *unreliable* hearsay information. First, appellant cites *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975), *cert. denied* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), for the proposition that an informant's confession identifying another person as his accomplice is not technically a declaration against penal interest and, thus, does not have the safeguards of trustworthiness necessary to be deemed admissible hearsay. Second, appellant argues that even if that portion of Branch's confession implicating appellant is considered a declaration against penal interest, only those declarations which "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability" can be admitted into evidence. *Commonwealth v. Nash*, 457 Pa. 296, 302, 324 A.2d 344, 345 (1974), *quoting Chambers v. State of Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973).

Appellant's contention is patently untenable. There is a vast difference between the sufficiency of hearsay information necessary to show probable cause for an arrest and the factors relating to admissibility of hearsay evidence to prove an accused's guilt at trial. The test for probable cause to arrest "is not one of certainties, but rather of probabilities dealing 'with the considerations of everyday life.' *Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677, 681 (1976). It is not equivalent to the 'proof beyond a reasonable doubt' standard applied in a criminal trial. *Commonwealth v. Dickerson, supra; Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972)." *De Salle v. Penn Central Transportation Co.*, 263 Pa.Super. 485, 398 A.2d 680 (1979). Accordingly, to establish probable cause on the basis

of hearsay information an arresting officer need only satisfy the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as explicated in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The officer must both know the underlying circumstances from which the informer concluded that the suspect participated in the crime and have some reasonable basis for concluding that the informant is reliable. *Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Patterson,* 266 Pa.Super. 167, 403 A.2d 596 (1979).

In the instant case, the officer who made the arrest had received information directly from appellant's co-felon implicating himself and appellant. We have long expressed the view that hearsay information of this type will satisfy the *Aguilar-Spinelli* requirements and, thus, supply the probable cause for a warrantless arrest. *See Commonwealth v. Matthews,* 446 Pa. 65, 285 A.2d 510 (1971); *Commonwealth v. Patterson, supra; Commonwealth v. Reisinger,* 252 Pa.Super. 1, 380 A.2d 1250 (1977); *Commonwealth v. Rose,* 211 Pa.Super. 295, 235 A.2d 462 (1967). *Accord, Commonwealth v. Wagner,* 486 Pa. 548, 406 A.2d 1026 (1979); *Commonwealth v. Stickle,* 484 Pa. 89, 398 A.2d 957 (1979); *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); *Commonwealth v. Johnson,* 467 Pa. 146, 354 A.2d 886 (1976). The first requirement, regarding the underlying circumstances from which the informant gathered the information, is satisfied by his admitted participation in the crime. *See Commonwealth v. Matthews, supra; Commonwealth v. Reisinger, supra.* The second, or reliability, requirement is met since the co-defendant's confession, like an admission against proprietary interest, carries its own indicia of credibility. *Id.* Therefore, we must reject appellant's contention that his arrest was without probable cause, that the confession obtained was a tainted fruit thereof, and that the trial court erred in ruling the confession admissible.

Appellant also argues that the facts of the instant case are similar to the facts in *Commonwealth v. Brooks,* 468 Pa. 547, 364 A.2d 652 (1976), and *In re Betrand,* 451 Pa. 381, 303 A.2d 486 (1973), where uncorroborated tips were found inade-

quate to establish probable cause and evidence was sup-
pressed. In particular, appellant contends that the phone
caller's tip identifying his whereabouts at the corner of
Carlisle Street and Susquehanna Avenue supplied no more
information indicating the underlying circumstances upon
which it was based, nor the reliability of the informant, than
the anonymous tips in either *Brooks*[7] or *Betrand*.[8] The
difficulty with appellant's argument is that the cases upon

7. The facts upon which the supreme court in *Brooks* held that the
prosecution had failed to establish probable cause for appellant's
arrest were as follows:

Detective O'Brien was the police officer assigned to investigate the
homicide for which appellant was arrested. While at the scene of
the crime, Detective O'Brien received information from witnesses
to the shooting, and other young people in the area, that the
"Cedar Street gang" was responsible, and that this gang had been
involved in several similar incidents in the past four weeks. Detec-
tive O'Brien then began to patrol the area looking for suspects, and
". . . tried to cultivate more information." (N.T.Supp. 5). At
approximately 11:30 p. m., December 10, 1973, approximately
three hours after the shooting, Detective O'Brien received informa-
tion from police headquarters that an anonymous phone caller had
stated that "Brooks from Baltimore Avenue was one of the persons
responsible for this shooting." Detective O'Brien also received
information that several persons responsible for the shooting were
in a bar located at Rogers Street and Baltimore Avenue. The
source of this information does not appear on the record. At
approximately 12:45 a. m., December 11, 1973, while patrolling
near the intersection of Rogers Street and Christian Street (near
the location of the bar named by the anonymous caller) in an effort
to locate members of the Cedar Street gang and obtain information
Detective O'Brien stopped appellant who was walking on the street
to ask him some questions. The detective's intent in questioning
appellant was to ascertain the validity of the anonymous telephone
tip, and to ascertain the identify of "Brooks from Baltimore Ave-
nue." At this time the detective did not know appellant's identity.
In fact, he knew nothing about appellant but suspected that the
person walking along the street might be a Cedar Street gang
member. Detective O'Brien asked appellant his name and was told
"Richard Brooks." The detective then asked appellant where he
lived, and upon hearing that appellant lived on Baltimore Avenue,
placed appellant under arrest.

*Commonwealth v. Brooks*, 468 Pa. 547, 551–52, 364 A.2d 652, 654
(1976).

8. In *Betrand*, the prosecution argued that the following facts supplied
probable cause:

On January 8, 1971, a pharmacist and his assistant were beaten
and robbed by three unidentified males on Germantown Avenue in

which he relies are readily distinguishable from the case *sub judice*. In neither of those cases was the information upon which the arrest was based supplied by the confession of an accomplice, incriminating both himself and the person to be arrested. As previously discussed, such information was by itself sufficient in law to show probable cause for appellant's arrest. The caller's tip herein merely served to inform Detective Romano of Jinx's whereabouts. In this regard, the trial court aptly stated:

> The detective, upon approaching the only individual wearing a new coat among the group of males on the corner named by the informant, did not immediately arrest or otherwise detain him. Instead, he inquired if the man was Jinx. Defendant responded affirmatively and, *at that point, armed with the knowledge that a co-defendant had implicated Jinx who hung with Robert Moore between the 1400 and 1600 blocks of Susquehanna,* that a citizen in the neighborhood had said that such a person was on the corner where defendant was found, and that defendant acknowledged that he was Jinx, the detective made his arrest.

> .  .  .  .  .

> ... Even if there had been no informant, if the detective had gone to the corner and asked, "Is anybody here named Jinx?" and gotten an affirmative reply, he would have sufficient grounds to arrest.

8, 10 (emphasis added).

The judgment of sentence is affirmed.

> Philadelphia at approximately 8:00 P.M. Almost six weeks later the police received an anonymous phone call from a youth who said that one of the participants in that robbery was named "Primo" and that "Primo" lived in a certain area of Philadelphia. Two days later, appellant, George Betrand, a juvenile, known to the police as "Primo", was arrested without a warrant. He was taken immediately to the station house and placed in a locked interrogation room where he remained for approximately two hours. A detective subsequently arrived and advised him of his rights by reading from the standard police interrogation card. After approximately one-half hour of questioning, appellant gave an oral statement admitting his involvement in the robbery.
> *In re Betrand,* 451 Pa. 381, 384, 303 A.2d 486, 487 (1973).