440 A.2d 1228

**COMMONWEALTH of Pennsylvania,**

v.

**Ezekiel SIMMONS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Jan. 29, 1982.

74

William J. Mazzola, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

On November 10, 1977, Appellant was found guilty at a bench trial before the Honorable William M. MARUTANI of the Court of Common Pleas of Philadelphia County of rape [1],

* Pres. Judge John Q. Stranahan, of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.

   Judge Leonard Sugerman, of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

1. 18 Pa.C.S.A. § 3121.

statutory rape[2], corruption of a minor[3] and criminal conspiracy[4]. Post trial motions were filed, argued and denied, and Appellant was sentenced to a term of 7½ to 15 years upon the rape conviction, and to terms of 2 to 5 years upon the convictions for corruption of a minor and criminal conspiracy. The latter two sentences were to be served concurrently with each other but consecutively to the sentence imposed upon the rape conviction.

On appeal, as below, the single contention advanced by Appellant is that the admission of his statement at trial was error, as the statement was the tainted fruit of an illegal arrest, made without probable cause.

Appellant was arrested in Philadelphia on May 31, 1977, at 2:15 o'clock P.M. and within minutes after his arrival at the Police Administration Building ("P.A.B."), gave an inculpatory statement to the arresting officer, ultimately reduced to writing, in which he admitted twice raping the victim. Pre-trial, Appellant filed a motion to suppress the statement based upon the ground, *inter alia*, that the statement was the product of an arrest made without sufficient probable cause and thus illegal.

A suppression hearing upon Appellant's motion was conducted by the Honorable G. Fred DiBONA, and at the conclusion of the hearing, Judge DiBONA denied the motion to suppress the statement, concluding that the arrest of Appellant was based upon probable cause. The statement was ultimately introduced in evidence at Appellant's trial.

Before we address the issue presented by Appellant, however, we must dispose of several threshold questions presented by the record before us, including our scope of review.

■ Pa.R.Crim.P. 323(i), in effect currently and at the date of the instant suppression hearing, requires the suppression judge to "enter on the record a statement of

2. 18 Pa.C.S.A. § 3122.

3. 18 Pa.C.S.A. § 3125.

4. 18 Pa.C.S.A. § 903.

findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights . . . ." *Id.* The purpose of Rule 323(i) is to insure a meaningful review of the lower court's decision. *Commonwealth v. Harris*, 275 Pa.Super. 18, 24, 418 A.2d 589, 592 (1980).

At bar, the suppression judge failed to make formal findings of fact on the record. During the recorded argument on Appellant's motion, however, the suppression judge made a number of statements that are obviously his findings of fact.[5] In those statements, the judge makes clear his findings with respect to the credibility of each witness as well as the facts as he determined them. He then concluded:

"THE COURT:

All right. Motion to suppress is denied. The arrest was made with probable cause which I have outlined, with a warrant. The warrant was not defective in the opinion of this court. The interrogation which ensued was completely in accord with the prescribed Constitutional guarantees. Therefore, the motion to suppress the statement is respectfully denied."

We have also been provided with a comprehensive and scholarly opinion by Judge MARUTANI for the court en banc in which the findings of the suppression judge are again set out and analyzed in depth.

Thus, we are more than satisfied that these findings permit a meaningful review of the decision of the suppression judge. *Compare Commonwealth v. Jackson*, 464 Pa. 292, 346 A.2d 746 (1975) with *Commonwealth v. Harris*, supra, and *Commonwealth v. Walls*, 255 Pa.Super. 1, 386 A.2d 105 (1978) (SPAETH, J., concurring and dissenting).

It must also be noted at the outset that the court en banc specifically found, and the Commonwealth implicitly concedes in its Brief filed here that Appellant's statement was the product of his arrest, and if resulting from an illegal arrest, is impermissibly tainted and should have been sup-

5. Notes of Testimony, Suppression Hearing ("N.T.S.H.") 151–58.

pressed. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Bogan*, 482 Pa. 151, 393 A.2d 424 (1978);[6] *Commonwealth v. Yocham*, 473 Pa. 445, 375 A.2d 325 (1977) (collects cases); *Commonwealth v. Whitaker*, 461 Pa. 407, 336 A.2d 603 (1975); *Commonwealth v. Patterson*, 266 Pa.Super. 167, 403 A.2d 596 (1979).

We must therefore determine whether Appellant's arrest was based upon probable cause, within the perimeter of our scope of review. Bearing in mind that the suppression judge concluded as the result of his findings that Appellant's arrest was based upon probable cause, our function on review is to determine whether the record supports those factual findings and the legitimacy of the inferences and legal conclusions drawn from such findings. In making this determination, we consider only the evidence of the Commonwealth's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Watson*, 487 Pa. 169, 171, 409 A.2d 19, 20 (1979); *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976); *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4

**6.** In *Wong Sun, supra*, 371 U.S. at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455, the Supreme Court said:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality by means sufficiently distinquishable to be purged of the primary taint." [Citation omitted]. Thus, as *Commonwealth v. Bogan*, supra 482 Pa. at 157, 393 A.2d at 427 points out, not *all* confessions made by a person illegally arrested are per se inadmissible as evidence at trial. The issue can be resolved only on the facts of each case. *Id.*, 482 Pa. at 157, 393 A.2d at 427. *See Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974) and *Commonwealth v. Yochorn, supra*, discussing at length the concepts of attenuation and dissipation of the primary taint of an illegal arrest. Suffice it to say that in the case at bar there is not the slightest suggestion that if tainted by an illegal arrest, Appellant's statement was purged of such primary taint.

(1981); *Commonwealth v. Hunt*, 280 Pa.Super. 205, 421 A.2d 684 (1980).[7]

Viewed in that light, the record of the suppression hearing reveals that on May 27, 1977, Detective Martin Devlin of the Philadelphia Police Department was assigned to investigate the gang rape of a 12 year old girl, allegedly having occurred during the afternoon hours of the same day.

At 9:00 o'clock that evening, Devlin interviewed the victim in the hospital and again later that night in the P.A.B. During the course of these interviews, the victim told Devlin that one of her attackers was named "Zeke", (Appellant's first name is Ezekiel), and that he was taller than the others, dark-skinned, well-built with short hair, and 19 or 20 years old. Shortly after the second interview with the victim, Devlin interviewed one Marvin Steward, another of the victim's attackers then in custody and ultimately tried with Appellant for the rape as a co-defendant. During the latter interview, Steward told Devlin that both he and "Zeke" were two of the persons who raped the victim. Later, Devlin interviewed a second participant, one Andre "Almond" Harris, also then in police custody. Harris told Devlin as well that he and "Zeke" raped the victim, and that "Zeke" lived at 50th and Reno Streets in the City of Philadelphia. Devlin also interviewed a girl named Mimi who was with the victim shortly before the attack. "Mimi" also told Devlin that "Zeke" lived at 50th and Reno Streets.[8]

---

**7.** *Cf. Commonwealth v. Willis*, 483 Pa. 21, 26, 394 A.2d 519, 521 (1978), and *see Commonwealth v. Hunt*, supra, 280 Pa.Super. at 208, n.2, 421 A.2d at 685, n.2, considering but not deciding the question of whether our scope of review differs in the event the suppression court has failed to make findings. *See also, Commonwealth v. Jackson*, supra, 464 Pa. at 297–298, 346 A.2d at 748, suggesting that when a suppression court and the court en banc have failed to make findings of fact and conclusions of law, and the reviewing court is unable to determine *as a matter of law* that a confession was psychologically coerced, the court must remand for compliance with Pa.R.Crim.P. 323(i). *Compare Commonwealth v. Sparrow*, 471 Pa. 490, 498 n. 5, 370 A.2d 712, 716 n. 5, discussing the question in terms of the Court's opinion in *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

**8.** "Mimi's" name and address were known to Detective Devlin.

Aware that a teenage gang known as the "Hoopes Street Gang" operated near 50th and Reno Streets, and also aware that the victim's four attackers ranged in age from 17 to 19 years, Devlin next contacted his colleagues in the Juvenile Aid Division Of the Philadelphia Police Department to determine if they were aware of a person named "Zeke" who lived near Hoopes Street, perhaps at 50th Street, and a member of the Hoopes Street gang. Juvenile Aid officers, in response and upon hearing the name "Zeke", immediately told Devlin that an Ezekiel Simmons lived at 50th and Reno Streets.

Devlin also went to 50th and Reno Streets and asked persons in the neighborhood where "Zeke" lived. He was told by neighbors that "Zeke" lived at 5035 Reno Street, a few doors from the intersection of 50th and Reno Streets. The next morning, Devlin went to 5035 Reno Street and spoke with Ezekiel Simmon's mother and sister. Devlin asked Mrs. Simmons to describe her son and the description matched that given by the victim.[9]

Based upon this information, Devlin obtained the foregoing warrant for Appellant's arrest on May 31, 1977, arrested Appellant and charged him with the instant crimes. In the face of this record, then, we must determine whether Appellant was arrested upon probable cause.

## I

### Affidavit for Arrest Warrant

Appellant first attacks the "affidavit" section of the complaint underlying the arrest warrant, contending that it contains nothing more than conclusions and fails to set forth any asserted facts from which a magistrate could find probable cause.

Detective Devlin was the complainant, and the "affidavit" in the complaint sets forth in its entirety the following:

---

9. Devlin also testified that Appellant, Ezekiel Simmons fit the two descriptions given him by Mrs. Simmons and the victim.

"On or about Friday 5–27–77, in the County of Philadelphia, the accused committed the following acts: the def. did along with his associates rape [victim's name and address] while inside 871 N. 49th St. CHARGES: Rape 3121F1, Agg. Asslt. 2702 MI, Stat. Rape 3122 F2, Corrup. Minor 3125 M2, Terr. threats 2706 MI, Consp. 903 all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the pertinent Acts of Assembly."

This statement is obviously conclusory and devoid of any factual information. On May 31, 1977, however, the date the warrant was issued, the issuance of warrants of arrest was governed by Pa.R.Crim.P. 132–134, and those rules did not require that all information used to establish probable cause be set forth in a written affidavit. Thus it was that an affiant's sworn oral statements or testimony before a magistrate could supplement his written affidavit to form the basis for the issuance of an arrest warrant.[10]   *Common-*

10. On April 26, 1979, the Supreme Court adopted Pa.R.Crim.P. 119, effective as to arrest warrants issued on or after July 1, 1979. The Rule provides the following:

"RULE 119. Requirements for Issuance

(a) No arrest warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

(b) At any hearing on a motion challenging an arrest warrant, no evidence shall be admissible to establish probable cause for the arrest warrant other than the affidavits provided for in paragraph (a)."

The procedural change effected by the Rule is evident from the comment to the Rule:

"Comment: This rule does not preclude oral testimony before the issuing authority, but it requires that such testimony be reduced to an affidavit prior to issuance of a warrant. All affidavits in support of an application for an arrest warrant must be sworn to before the issuing authority prior to the issuance of the warrant.

Where a properly sworn to complaint contains a statement of facts and circumstances sufficient to establish probable cause for the issuance of the arrest warrant, it may serve as the affidavit.

This rule carries over to the arrest warrant, the requirement that the evidence presented to the issuing authority be reduced to writing and sworn to, and that only the writing is subsequently admissible to establish that there was probable cause. In these

*wealth v. Geary,* 488 Pa. 174, 411 A.2d 1195 (1980); *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973). Accordingly, the warrant was at least superficially in compliance with the then applicable Rules.

At the suppression hearing, however, the Commonwealth made no effort to elicit from Detective Devlin the information he may have orally imparted to the magistrate before obtaining the warrant. The only testimony on the entire subject in the record is the following:

"Q. [BY THE ASSISTANT DISTRICT ATTORNEY] ... When you returned on the 31st, were you armed with any kind of a warrant?

A. [BY DETECTIVE DEVLIN] Yes, sir, I was.

Q. What kind of warrant was it, sir?

A. I had a warrant for arrest, which was obtained on 5/31/77 by [sic] Judge Poserina.

Q. Was it so signed, sir?

A. Yes, it was."

N.T.S.H. 69–70

■ Pa.R.Crim.P. 323(h), in effect at the date of the proceedings below, and yet in effect, places the burden upon the Commonwealth to establish that any evidence sought to be used at trial and which is the subject of a defendant's motion to suppress was not obtained in violation of such defendant's rights. *Commonwealth v. Fisher,* 466 Pa. 216, 352 A.2d 26 (1976); *Commonwealth v. Ryan,* 268 Pa.Super. 259, 407 A.2d 1345 (1979).

■ It is thus obvious and the Commonwealth concedes that it failed to carry its burden of proving that Appellant's statement was not the product of an arrest made pursuant to a warrant issued without probable cause.

Nevertheless, Pa.R.Crim.P. 101.3., also in effect at the date of the proceedings below and yet in effect, provides that an arrest may be made *without* a warrant (1) when the

respects, the procedure is now similar to that applicable to search warrants. See Rule 2003."

offense is a felony, and (2) if the arrest is based upon probable cause. The crimes of Rape, Statutory Rape, and Criminal Conspiracy to commit those crimes are felonies,[11] and if Detective Devlin, the arresting officer, had probable cause to arrest Appellant without a warrant, the arrest was lawful and the warrant itself mere surplusage, and the infirmity from which it suffered irrelevant.

We turn, then, to an analysis of the information known to Detective Devlin at the time of the arrest to determine whether it constituted probable cause.

## II

### Probable Cause for Warrantless Arrest

In *Commonwealth v. Kazior*, 269 Pa.Super. 518, 410 A.2d 822 (1979), *allocatur denied* 269 Pa.Super. 518, 410 A.2d 822 (1980), reiterated recently in *Commonwealth v. Allen*, 287 Pa.Super. 88, 429 A.2d 1113, 1119–20 (1981), we enunciated the test for probable cause:

"A legal arrest without a warrant[12] depends upon probable cause. *Commonwealth v. Pinney*, 474 Pa. 210, 378 A.2d 293 (1977); *Commonwealth v. Bishop*, 425 Pa. 175, 228 A.2d 661 (1967), *cert. denied*, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967). Probable cause exists if the facts and circumstances which are within the knowledge of the police at the time of the arrest, and of which they have reasonable trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a suspect has committed or is committing a crime. *Commonwealth v. Powers*, 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Culmer*, 463 Pa. 189, 195, 344 A.2d 487, 490 (1975); *Commonwealth v. Jones*, 457 Pa. 423, 428, 322

---

11. *See* notes 1, 2 and 4, supra.

12. The test for probable cause is the same whether or not a warrant is present, as an arresting officer must be aware of information sufficient for the issuance of a warrant at the moment he makes the arrest. *Commonwealth v. Mitchell*, 477 Pa. 274, 278–79, 383 A.2d 930, 932 (1978), quoting from *Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677, 680–81 (1976).

A.2d 119, 123 (1974); *Commonwealth v. Garvin*, 448 Pa. 258, 262, 293 A.2d 33, 35–36 (1972); *Commonwealth v. Bishop*, supra. The burden of showing probable cause is on the Commonwealth. *Commonwealth v. Holton*, 432 Pa. 11, 14–15, 247 A.2d 228, 230 (1968). The standard of probable cause, however, must be applied to the totality of the circumstances facing the police. Facts insufficient to justify an arrest if considered separately may in combination supply probable cause. *Commonwealth v. Roscioli*, 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976). In *Commonwealth v. Tolbert*, 235 Pa.Super. 227, at p. 230, 341 A.2d 198, at p. 200 (1975), this Court said: When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial. *Commonwealth v. Devlin*, 221 Pa.Super. 175, 289 A.2d 237 (1972)."

*Id.* 269 Pa.Super. at 523–24, 410 A.2d at 824–25.

*And see Commonwealth v. Stokes*, 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Patterson*, 266 Pa.Super. 167, 403 A.2d 596 (1979).

▮ When we apply this test to the facts at bar, probable cause to arrest emerges with singular clarity. As one example, it will be recalled that two of Appellant's confederates, Marvin Steward and Andre Harris, named "Zeke" as a participant in the crimes while giving Detective Devlin statements incriminating themselves. This Court, and our Supreme Court as well, have frequently held that the uncorroborated confession of an accomplice which implicates the

suspect will, alone, supply probable cause for a warrantless arrest. *Commonwealth v. Stokes,* supra; *Commonwealth v. Jenkins,* 288 Pa.Super. 232, 431 A.2d 1023 (1981) (collects cases); *Commonwealth v. Patterson,* supra. While it is correct to note that neither Steward nor Harris used Appellant's surname when giving their statements to Detective Devlin, the connection between the "Zeke" named by Steward and Harris and Appellant, was supplied by Juvenile Aid Division officers and "Mimi".[13]

Appellant next attacks separately each category of information in the possession of Detective Devlin at the time of the arrest and argues that standing separately, no category supplies probable cause. We will respond, as we have often stated in the past, that facts insufficient to justify an arrest separately may in combination supply probable cause. *Commonwealth v. Allen,* 287 Pa.Super. 88, 429 A.2d 1113 (1981); *Commonwealth v. Kazior,* supra; *Commonwealth v. Roscioli,* 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976).

Finally, Appellant relies upon *Commonwealth v. Brooks,* 468 Pa. 547, 364 A.2d 652 (1976), wherein the Supreme Court found an absence of probable cause upon which to base a warrantless arrest, and argues that the facts in the instant case are virtually indistinguishable from the facts there. In *Commonwealth v. Jenkins,* supra, 288 Pa.Super. at 238, n. 7, 431 A.2d at 1026, n. 7, Judge Price, writing for a panel of this Court, set forth the operative facts of *Brooks* upon which the Supreme Court found that the Commonwealth had failed to establish probable cause for appellant's arrest:

"Detective O'Brien was the police officer assigned to investigate the homicide for which appellant was arrested. While at the scene of the crime, Detective O'Brien re-

---

13. Appellant contends in his brief that Detective Devlin, during his testimony, could not recall whether "Mimi" had named "Zeke" as one of the persons who she saw with the victim shortly prior to the attack. Appellant's Brief, at 6. It is true that during direct examination, Devlin testified that he could not recall whether "Mimi" told him she had seen "Zeke". (N.T.S.H. 63.) Under cross examination by Appellant's counsel, however, Devlin on several occasions testified that "Mimi" had indeed told him that she had seen "Zeke" with the victim at that time. (N.T.S.H. 84–85).

ceived information from witnesses to the shooting, and other young, people in the area, that the 'Cedar Street gang' was responsible, and that this gang had been involved in several similar incidents in the past four weeks. Detective O'Brien then began to patrol the area looking for suspects and '. . . tried to cultivate more information. . . ' At approximately 11:30 p.m., December 10, 1973, approximately three hours after the shooting, Detective O'Brien received information from police headquarters that an anonymous phone caller had stated that 'Brooks from Baltimore Avenue was one of the persons responsible for this shooting'. Detective O'Brien also received information that several persons responsible for the shooting were in a bar located at Rogers Street and Baltimore Avenue. The source of this information does not appear on the record. At approximately 12:45 a. m., December 11, 1973, while patrolling near the intersection of Rogers Street and Christian Street (near the location of the bar named by the anonymous caller) in an effort to locate members of the Cedar Street gang and obtain information Detective O'Brien stopped appellant who was walking on the street to ask him some questions. The detective's intent in questioning appellant was to ascertain the validity of the anonymous telephone tip, and to ascertain the identi[t]y of 'Brooks from Baltimore Avenue'. At this time the detective did not know appellant's identity. In fact, he knew nothing about appellant but suspected that the person walking along the street might be a Cedar Street gang member. Detective O'Brien asked appellant his name and was told 'Richard Brooks'. The detective then asked appellant where he lived, and upon hearing that appellant lived on Baltimore Avenue, placed appellant under arrest. *Commonwealth v. Brooks*, 468 Pa. 547, 551–52, 364 A.2d 652, 654 (1976).

Appellant's reliance upon *Brooks* is severely misplaced as the case is readily distinguishable from the case *sub judice.* Instantly, Detective Devlin had received information directly from two of Appellant's co-felons implicating themselves

and "Zeke". One of co-felons told Devlin that "Zeke" lived at 50th and Reno Streets. "Mimi" confirmed that address and Juvenile Aid Division officers supplied the complete name and approximate address of Appellant. Finally, neighbors furnished Devlin with Appellant's specific address several doors from the intersection of 50th and Reno Streets. This information can hardly be equated with the anonymous telephone call that essentially led to the arrest in *Brooks*.

In *Commonwealth v. Jenkins*, supra, quite similar on its facts to the case at bar, the arresting officer arrested appellant's co-felon for participation in two robberies. At the time of his arrest, the co-felon admitted his involvement in the crimes and also implicated one "Jinx" (appellant) who "hung out" between the 1400 and 1600 blocks of Susquehanna Avenue, in Philadelphia with one Moore, a third co-felon. On the basis of this information, the arresting officer commenced a patrol of the area identified by the co-felon as Jinx's "hangout". The officer asked residents whether they knew a person called "Jinx", who was a friend of Moore and was frequently in that neighborhood. The officer subsequently received information from a telephone caller, not identified on the record, that he knew Moore and his friend "Jinx". In a second telephone call, the caller later told the officer that Jinx was then at a specified location, between the 1400 and 1700 blocks of Susquehanna Avenue, wearing a new brown cashmere coat. The officer arrived at the location, approached appellant who was wearing a "new-looking gray wool coat". As the officer drew near to appellant, whose identity was then yet unknown to the officer, he asked, "Jinx?" Appellant replied "yes", was thereupon arrested, and gave an incriminating statement later introduced at his trial. Appellant in *Jenkins* contended on appeal, as does Appellant here, that the statement was improperly admitted as the product of an illegal arrest, made without probable cause. *Id.*, 288 Pa.Super. at 234–35, 431 A.2d at 1024.

The Court disagreed and found probable cause on the basis of the co-felon's statement alone. We are more than

satisfied that there is no substantive distinction between *Jenkins* and the case before us and we must reach the same result.[14]

Affirmed.

14. As earlier noted, we have found the warrant obtained by Detective Devlin to have been issued without a factual basis upon which a magistrate might find probable cause, and we have treated the issue before us as one involving a warrantless arrest. It is also noted that Appellant was arrested in his home. In *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), the Supreme Court held for the first time that in the absence of exigent circumstances, an arrest warrant is required to effectuate a valid arrest inside the arrestee's home. *Williams* was decided on November 18, 1978, and Appellant, at bar, was arrested on May 31, 1977, 17 months earlier. In *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980), the Supreme Court declined to accord *Williams* retroactive effect and held that the decision applies only to arrests made subsequent to November 18, 1978.