J-A17022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                           :                 PENNSYLVANIA

                         Appellant     :

                                          :

                                          :

                     v.                               :

                                          :

                                          :

JIHAD PRATT                         :       No. 557 EDA 2023

Appeal from the Order Entered February 3, 2023
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007777-2021

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:[*]               **FILED AUGUST 14, 2025**

The Commonwealth of Pennsylvania appeals from the order that granted the motion to suppress filed by Jihad Pratt ("Appellee"). We vacate and remand for further proceedings consistent with this memorandum.

The suppression court summarized the underlying facts as follows, demonstrating its disinclination to decide the credibility of the testimony proffered at the suppression hearing:

> On October 6, 2020, two Philadelphia police officers were stationed in the 12th District of the city, in an area known for high levels of weapons and drugs crime. The officers conducted a traffic stop of Appellee in the area of the 1700 block of 60th Street, due to windows that appeared to be too darkly tinted. Officer [Raymond] Fountain approached the front driver side window, while Officer [Brian] Solom[o]n approached the front passenger side window. As Officer Solom[o]n approached the vehicle, he heard Appellee speaking on the phone, saying "I got that thing on

---

[*] The appeal was reassigned to this author on July 15, 2025.

me." As the officers approached, Appellee rolled down his windows and, while he rolled down his windows, he leaned forward and back. The officers asked Appellee for his license, registration, and proof of insurance, at which time Officer Solom[o]n allegedly observed Appellee's hands shaking and that he shuffled through his documentation. Appellee handed over the requested documentation to Officer Fountain, who then gave it to Officer Solom[o]n to run in the system. After conducting an initial run of Appellee's information, Officer Solom[o]n reapproached Appellee's vehicle because the original registration Appellee gave him did not match the vehicle Appellee operated. Through this search, Officer Solomon confirmed Appellee did not have a license to carry.

At this time, Officer Fountain continued to engage with Appellee, and Officer Solom[o]n stood in front of the vehicle, [peering into the compartment from various angles] seeking to find any firearm-related objects. Five minutes into the stop, Officer Solom[o]n saw what he perceived as the butt of a firearm. Officer Solom[o]n then quickly reacted by pushing Officer Fountain out of the way, and asked Appellee to step out of the vehicle. Officer Solom[o]n placed Appellee under arrest and escorted him to the back of his police vehicle. Officer Solom[o]n then used gloves to recover [from under the driver's seat] the firearm he believed he saw from outside of the car.

Suppression Court Opinion, 7/12/23, at 1-2 (cleaned up).

The Commonwealth charged Appellee with various firearms offenses. After trial was scheduled and rescheduled multiple times, Appellee filed a suppression motion asserting that the officers searched the car without a warrant solely because they alleged to have seen the firearm and "seeing a gun is not reasonable suspicion of wrongdoing, much less does it establish probable cause." Motion to Suppress, 8/26/22, at 1 (citation omitted). The court held a hearing at which Officer Solomon testified to the facts summarized by the suppression court above, and the Commonwealth further

- 2 -

introduced footage from cameras worn by Officer Fountain and Officer Solomon.[1] As we discuss in greater detail *infra*, the court granted Appellee's motion at the conclusion of the hearing, indicating that, even if Officer Solomon did see the firearm in plain view during the stop, he unlawfully seized it without first obtaining a warrant. *See* N.T. Suppression Hearing, 2/3/23, at 40-41.

The Commonwealth filed a timely notice of appeal, certifying that the court's ruling substantially handicapped the prosecution. The suppression court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the Commonwealth timely complied, and the court authored a Rule 1925(a) opinion in support of its ruling.

The Commonwealth states the following question for our consideration:

> Did the lower court err in suppressing evidence (a gun) recovered from the car in which [Appellee] was the driver and the sole occupant when, during a lawful traffic stop, an officer who had learned that [Appellee] lacked a valid license to carry a firearm observed, from a lawful vantage point, the butt of the gun in plain view on the floor of the car, where it would have been within [Appellee's] reach upon completion of the traffic stop?

Commonwealth's brief at 4.

We begin with a review of governing legal principles. As a general rule, "warrantless vehicle searches require both probable cause and exigent

---

[1] The firearm was not visible in either of the videos, but the footage, which not taken from the officers' eye level, did not contradict Officer Solomon's testimony.

- 3 -

circumstances[.]" **Commonwealth v. Alexander**, 243 A.3d 177, 207 (Pa. 2020). However, there are several exceptions to this general rule. For one, the plain view doctrine allows an officer to seize an object if: "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object," *i.e.*, probable cause to believe that a crime has been committed but lack of advance notice that he would encounter the evidence. **See Commonwealth v. Miller**, 56 A.3d 424, 429 (Pa.Super. 2012) (cleaned up). Hence, if an officer spies contraband in plain sight during a valid traffic stop, he may immediately seize it pursuant to the plain view doctrine without obtaining a warrant, and without there being both probable cause and exigent circumstances. In other words, "where the circumstances permit an application of the plain view exception, we need not apply **Alexander**." **Commonwealth v. Smith**, 285 A.3d 328, 332 (Pa.Super. 2022) (reversing grant of motion to suppress firearm observed in the back seat of a car during a traffic stop).

Another exception to the general rule is that no warrant is required for an officer to perform a protective sweep, akin to a **Terry** frisk,[2] of the passenger compartment of an automobile. This warrantless search is permissible "if the police officer possesses a reasonable belief based on

_____

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." **Commonwealth v. Morris**, 644 A.2d 721, 723 (Pa. 1994) (cleaned up). This search is limited to places within the passenger compartment where a weapon may be hidden. **Id**.

We now examine the applicable procedural law. When a criminal defendant files a suppression motion, the Commonwealth has the burden to prove by a preponderance of the evidence that the seized item was not unlawfully obtained. **See**, **e.g.**, **Commonwealth v. Seeney**, 316 A.3d 645, 648–49 (Pa.Super. 2024). The purpose of a suppression hearing pursuant to Pa.R.Crim.P. 581 is to enable the court to make findings of fact based upon credibility determinations. **See**, **e.g.**, **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa.Super. 2003) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony." (citation omitted)). After making its credibility assessments and factual findings, the court then must state the conclusions it reached upon applying the law to those facts. **See** Pa.R.Crim.P. 581(I). This, in addition to permitting the parties to assess whether to take an appeal, is designed to allow "a meaningful review of the lower court's decision." **Commonwealth v. Simmons**, 440 A.2d 1228, 1230 (Pa.Super. 1982).

On appeal from the suppression court's ruling, this Court "is bound by the lower court's determination of issues of credibility," which it "resolved through personal observation[.]" **Commonwealth v. Camacho**, 625 A.2d 1242, 1245 (Pa.Super. 1993). In this vein, our Supreme Court has explained:

> [I]n the suppression context, appellate courts do not simply comb through the record to find evidence favorable to a particular ruling. Rather, appellate courts look to the specific findings of fact made by the suppression court. Those findings are dependent on the suppression court's credibility determinations. A suppression court may find some evidence favorable to the Commonwealth to be credible, and other evidence favorable to the Commonwealth to be incredible. Only after the court assesses and weighs all of the facts may the court issue conclusions of law specifically relating to those findings of fact.

**In re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013). Of course, this Court is not bound by the suppression court's legal conclusions in reviewing a suppression ruling, only the supported factual findings that underpinned them. **Id**. at 1080 n.6.

With this framework in mind, we turn to the suppression court's reasoning as stated on the record at the conclusion of the hearing:

> So Officer Solomon testified that he came around the right side of the vehicle, passenger's side of the vehicle. He stated that he heard [Appellee] say, I got that thing on me. After checking the registration of the car, license, so forth and so on, he proceeds to stand at the driver's side door and looked for something. He states that he saw the butt of a gun.
>
> I don't hear any testimony as to any exigent circumstances. I don't hear any testimony as to a crime being afoot. I don't hear any testimony that Officer Solomon felt that he was in danger of his life. **I cannot state that I believe that he actually saw the butt of the gun**.
>
> Based on what he stated, well, I heard him say, hey, I got something on me. So he was looking intently for that. **Even if,**

- 6 -

**again, as [Appellee] has argued, even if he maybe saw the butt of a gun, it wasn't exigent circumstances**. He could've gotten a search warrant for that car. He did not have enough to retrieve the gun.

And as such, your motion is granted.

N.T. Suppression Hearing, 2/3/23, at 40-41 (emphases added).

The Commonwealth immediately sought clarification of the court's basis, querying whether it was indicating that it did not find Officer Solomon to be credible. *Id*. at 41. The court responded: "**I'm not saying that I don't find him credible**. If I go based on everything that he said today, there is still not enough for the officer to retrieve the gun out of the vehicle." *Id*. (emphasis added). The Commonwealth then referenced the gun being in plain view, prompting the court to state:

The issue is there's plain view and then there's I'm going to look in every nook and cranny in this car because I heard something. **I'm not going to make a credibility finding today**. **I'm just saying that it's not enough probable cause**.

. . . .

Did Officer Solomon indeed see the butt of the gun while [Appellee] was seated in the vehicle at the time? So he was around, first, he was around the passenger side. He didn't see anything or he didn't testify that he saw anything. Then he was around the driver's side. So the driver is sitting in the vehicle. So his legs are over the edge of the seat, right? So there's only so much you see where when [*sic*] someone is seated in that position.

So he tapped his partner to tell him to get away. And then he removes the defendant from the vehicle, and they look down. And then, I don't know. Maybe he said he got his gloves and then he goes back in and retrieves the gun.

There's too many pieces to this that raise doubt here. So I don't know if he had a lawful vantage point. It doesn't look like that to me in this case.

*Id*. at 42-44 (emphasis added).

The Commonwealth then advocated for an alternative basis for validating the seizure, arguing that "even if [the court] doesn't find that he necessarily had a lawful vantage point, officers are allowed to frisk a vehicle for officers['] safety." *Id*. at 44. The Commonwealth continued: "And here we saw the officer saying what he saw what he thought was a firearm. Maybe he wasn't absolutely certain at that point, but he saw what he believed to be a firearm. And we saw him push his partner out of the way." *Id*. at 44-45. To this, this suppression court responded:

So if officers are allowed to frisk a vehicle for officer's safety, then that brings in everything.

Then when can you have a motion to suppress on a vehicle stop because there's also case law that says that you cannot extend a vehicle violation, a motor vehicle violation into a fishing expedition. And this was on the line of a fishing expedition.

So my ruling is my ruling. You made your objections. You made your alternate argu[ment]s.

*Id*. at 45.

After the Commonwealth appealed, the suppression court in its Rule 1925(a) opinion did not justify its decision based upon disbelief of Officer Solomon's representation that he saw what he believed to be a firearm. Rather, it focused upon the lack of exigent circumstances that would have allowed a warrantless search of Appellee's vehicle under *Alexander*. *See*

- 8 -

Suppression Court Opinion, 7/12/23, at 3-6. The court also rejected application of the plain view exception to the warrant requirement, primarily because it concluded that Officer Solomon had both the necessary time and probable cause to seek a warrant:

> Here, Officer Solomon had an opportunity to obtain a warrant, thus he did not have a lawful right of access to the firearm. A few minutes after Officer Solomon heard Appellee state that he had "that thing" on him, which Officer Solomon perceived to be a firearm, he then went and ran Appellee's information in his system. Officer Solomon then confirmed Appellee was not licensed to carry a firearm. **At this point, Officer Solomon had probable cause to believe Appellee was in violation of a crime**, and he should have sought a warrant in this moment, and searched Appellee's vehicle instead. . . . [T]he butt of the gun was not immediately apparent to either officer. Officer Fountain had been standing in front of Appellee for several minutes and never once saw the firearm or had reason to look. The only reason the firearm became known was because Officer Solomon guessed its placement within the vehicle after discovering Appellee did not have a license when he should have sought a warrant to conduct a constitutionally permissible search. Since Officer Solomon had ample time to execute a warrant, his access to the firearm was not lawful, and the plain view exception does not apply.

*Id*. at 7 (unnecessary capitalization omitted, emphasis added).

The above is problematic for multiple reasons. Initially we observe that the suppression court refused to make a definitive credibility determination as to the facts attested to by Officer Solomon. On the one hand, the court indicated that it could not "state that [it] believe[d] that he actually saw the butt of the gun." N.T. Suppression Hearing, 2/3/23, at 40. Yet, it thereafter said that it was "not saying that [it] d[id]n't find him credible," and that it was "not going to make a credibility finding" that day. *Id*. at 41-42. Instead, the

suppression court expressed the conclusion that Officer Solomon lacked authority to seize the gun even if it accepted his testimony that he saw it before asking Appellee to exit the vehicle. *Id*. at 41.

Further, since Officer Fountain did not testify, and the court did not state any factual inferences it drew from the evidence that was presented in this regard either at the hearing or in the opinion it filed more than five months later, it is unclear how the court determined what Officer Fountain did or did not see. Moreover, the court made contradictory findings as to whether the officers had probable cause during the stop to believe Appellee had committed a crime vis-à-vis a firearm. As such, this Court's review is hampered because it is ambiguous to what precise facts to which we must apply the law or what legal conclusions the suppression court drew from them.

This brings us to the next class of problems with the suppression court's ruling, namely its misapprehension of several governing legal principles. Although the court at the hearing and in its Rule 1925(a) opinion primarily focused upon *Alexander*, the Commonwealth did not attempt to justify the warrantless seizure of the firearm from Appellee's vehicle based upon probable cause and exigent circumstances. This case is simply not about the exception to the warrant requirement discussed in *Alexander*.

What the Commonwealth advocated was, alternatively, for the court to find that the plain view or protective sweep exceptions justified the warrantless seizure of the firearm. *See* N.T. Suppression Hearing, 2/3/23, at

- 10 -

38-45. The suppression court rejected plain view as justification for the seizure because it erroneously concluded that, even if Officer Solomon did see the gun from a lawful vantage point, he did not have a lawful right of access to it because he had probable cause and time to obtain a search warrant. *See* Suppression Court Opinion, 7/12/23, at 7.

In misconstruing the plain view doctrine, the suppression court failed to appreciate that "[t]he requirement of unexpected probable cause guards against pretextual automobile stops." *Commonwealth v. Saunders*, 326 A.3d 888, 905 (Pa. 2024) (cleaned up). Thus, "[i]f the police have advance knowledge a car may contain contraband or evidence of a crime, they cannot stop the vehicle in the hope of gaining plain view access to the item; they have to get a warrant." *Id*. However, if they conduct a traffic stop with no prior awareness that the vehicle contained evidence of a crime, they may seize it without first obtaining a warrant if they see it in plain view. *Id*. at 905-06 ("Presently, the police had no knowledge prior to stopping [the driver] for unrelated traffic violations that he had an unlicensed gun in his car. Rather, the probable cause arose unexpectedly on the street following the traffic stop . . ., so the seizure of the gun was lawful under the plain view exception to the warrant requirement.").

Concerning the Commonwealth's additional argument that Officer Solomon located the firearm upon conducting a lawful protective sweep of the area where Appellee could have accessed a weapon, the suppression court,

as quoted above, summarily dismissed this exception to the warrant requirement by suggesting that "if officers are allowed to frisk a vehicle for officer's safety, then that brings in everything" and questioning whether there would ever be a valid motion to suppress evidence obtained during a vehicle stop.[3]  **See** N.T. Suppression Hearing, 2/3/23, at 45.

The suppression court did not appear to accept that a protective sweep is a legitimate exception to the warrant requirement.  **See**, **e.g.**, **Michigan v. Long**, 463 U.S. 1032, 1049 (1983); **Morris**, 644 A.2d at 723.  Our Courts have long recognized that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible

---

[3] This issue was not stated in the Commonwealth's Pa.R.A.P. 1925(b) statement, which generally results in waiver.  **See** Pa.R.A.P. 1925(b)(4)(vii).  However, the record reveals that the suppression court's Rule 1925(b) order was not in compliance with subsection (b)(3) and (4) of the Rule.  Specifically, in addition to the omission of the addresses for serving the statement on the judge, although the order states that the trial court "shall" deem any issues not raised therein waived, it went on to say:  "Failure to comply with any portion of this Order **may** be considered by the Appellate Court as a waiver of all objections to any order, ruling, or other matters complained of on appeal."  Order, 6/6/23 (emphasis added).  Furthermore, the docket entry does not include the date on the order or the date of service, both of which are mandated by Pa.R.Crim.P. 114(C)(2).  Under these circumstances, waiver does not apply.  **See**, **e.g.**, **Commonwealth v. Lawrence**, 321 A.3d 989, 990 n.4 (Pa.Super. 2024) (concluding Rule 1925(b) did not result in waiver of issue omitted from concise statement because the court's order did not state that failure to include issues shall result in waiver); **Commonwealth v. Quinones**, 323 A.3d 190, 2024 WL 2874302, at *3 n.1 (Pa.Super. 2024) (non-precedential decision) (holding issues not among those listed in the appellant's Rule 1925(b) statement were not waived because the court's order was deficient in, *inter alia*, indicating that the failure to comply "may" rather than "shall" result in the appellate court finding those issues waived).

presence of weapons in the area surrounding a suspect." ***In re O.J.***, 958 A.2d 561, 564 (Pa.Super. 2008) (*en banc*) (cleaned up). "Indeed, it appears that a significant percentage of murders of police officers occurs when the officers are making traffic stops." ***Id***. at 565 (cleaned up). Thus, "a police officer may conduct a protective weapons sweep of a vehicle where the officer has sufficient facts at his disposal such that a reasonably prudent man would have believed his safety was compromised." ***Commonwealth v. Watley***, 153 A.3d 1034, 1045 (Pa.Super. 2016) (cleaned up). In evaluating whether the sweep was valid, "we look at the totality of the circumstances facing an officer when we examine whether that officer came to a reasonable suspicion to search for a weapon." ***Id***. (cleaned up). The question is not whether the officer subjectively feared for his safety, "but the objective reasonableness of the search under the totality of the circumstances." ***Id***.

Here, Officer Solomon testified that the block where this incident occurred is one of the most violent in the district such that a police presence is maintained there twenty-four hours each day. ***See*** N.T. Suppression Hearing, 2/3/23, at 8-9. He described the reasons why he believed that Appellee had a firearm in the car and explained how he moved his partner aside and ordered Appellee to get out of the car once he believed he saw the

butt of the gun.[4]    The suppression court in its initial discussion of its conclusions noted  that it did not "hear any testimony that Officer Solomon felt that he was in danger of his life." *Id*. at 40.  To the extent it addressed the Commonwealth's *Terry* sweep argument at the hearing, the court suggested that Officer Solomon engaged in a fishing expedition. *Id*. at 45. Yet, in its Rule 1925(a) opinion, the court opined both:  (1) that Officer Solomon, before seeing the firearm, had probable cause to believe that Appellee possessed one unlawfully; and (2) that Officer Solomon had no fear of immediate danger from Appellee, despite hearing him speak of what he understood as having a gun, seeing him lean forward and back, and then acting nervous with shaking hands, because Officer Solomon initially left his partner with Appellee when he went to run the vehicle information. *See* Suppression Court Opinion, 7/12/23, at 5-7.

These pronouncements from the suppression court reveal additional misapprehension of the law and unreasonable inferences of fact.  As indicated

_____

[4] While a protective sweep must be founded upon a particularized perception of peril, an officer may, as a matter of course, order the driver to vacate the vehicle for the duration of any traffic stop. *See Commonwealth v. Ross*, 297 A.3d 787, 793 (Pa.Super. 2023) ("[D]uring a lawful traffic stop, the officer may order the driver of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." (cleaned up)).  Therefore, if Officer Solomon, knowing Appellee lacked a license to carry a firearm, had asked him to disembark from the car and then saw the gun under the seat from his lawful vantage point, his immediate seizure of the gun would have been permissible pursuant to the plain view doctrine.  However, the Commonwealth does not suggest that this is what happened in the instant case.

- 14 -

above, the officer's subjective fear is not determinative. ***See Watley***, 153 A.3d at 1045. Further, as the Commonwealth notes: "Having one's partner stand watch is precisely what prudent police officers do when checking whether a potentially dangerous individual lacks a valid license or registration credentials (or has active arrest warrants)." Commonwealth's reply brief at 4 n.2. Additionally, our review is hampered by the unclear and sometimes contradictory declarations outlined in our discussion of the court's plain view analysis.

Overall, we perceive that the suppression court has not made factual findings or expressed any valid conclusions of law that defeat the Commonwealth's position that Officer Solomon had an objectively reasonable suspicion that Appellant might have been armed and dangerous. ***See Watley***, 153 A.3d at 1045-46 (holding that suppression issue lacked merit where neither trooper involved testified to a fear for their safety, and did not search the defendant before allowing him to return to his car although having seen him suspiciously covering the area below his knees; the troopers developed reasonable suspicion that the defendant was concealing a weapon when subsequently seeing a bulge in the floor mat). That being said, nor does the record as it stands allow us to opine that the sweep was justified in this case.

For these reasons, we vacate the order granting Appellee's suppression motion and remand for the court to state definitive credibility determinations

and factual findings and apply the correct law to those findings, and rule anew upon Appellee's suppression motion.

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Sullivan joins this memorandum.

Judge Nichols notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/14/2025