Ledford, Appellant, *v.* Pittsburgh & Lake Erie Railroad Company.

66

Argued April 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Paul L. Hammer,* for appellant.

· *G. Edward Yurcon,* with him *Joseph T. Kosek, Jr.,* for appellee.

OPINION BY CERCONE, J., September 22, 1975:

The instant appeal by Mr. Donald Ledford, the plaintiff below, arises from a jury verdict for the defendant railroad under plaintiff's complaint in trespass which alleged personal injuries suffered as a result of the railroad's non-compliance with the Federal Employers' Liability Act (FELA)[1] and the Boiler Inspection Act.[2] Before treating plaintiff's allegations of error, we will briefly summarize the facts of this case.

On August 15, 1971, in the course of his employment with the Pittsburgh and Lake Erie Railroad (P & LE), plaintiff was riding on a gondola car of a train which included nine cars, a caboose and a locomotive. Not far from its destination in Beaver County, the train stopped unexpectedly. In such situations it was apparently plaintiff's duty to assist in solution of the problem which caused the locomotive to stop. In response to this duty he started to dismount the gondola car in the ordinary manner by reaching out for the grab bar and stepping on a stirrup which was attached to the side of the car. As he began to put his second foot on the stirrup he lost his grip on the grab bar and stirrup and fell to the tracks below. As a result of this fall plaintiff allegedly sustained injuries to his foot and the lumbar region of his back.

At trial the evidence produced on both direct and cross-examination indicated that the train stopped because of the operation of the ground relays. The ground relays in diesel-electric locomotives are safety devices which function in a manner similar to circuit breakers and, according to the testimony of the engineer on that train, do not activate unless the locomotive malfunctions. In such cases, which apparently occur frequently, the relays are usually reset and the train continues on its journey. Such stoppages are common enough that they are not a

1. 45 U.S.C. § 51 et seq.
2. 45 U.S.C. § 23 et seq.

cause for concern unless they occur with uncommon frequency to the same locomotive.

Plaintiff contended that but for the malfunctioning of the locomotive which caused the ground relays to operate and the train to stop, he would not have attempted to dismount the train. And, if he had not attempted to dismount the train, he would not have been injured. Of course, under an ordinary negligence theory such a cause of action would barely get beyond the pleadings. First, the operation of the ground relays, being as common as it is, in and of itself does not persuade that the railroad negligently failed to properly maintain the locomotive. Furthermore, the train's stopping did not significantly increase the risk of harm to plaintiff, since mounting and dismounting the cars of the train is a routine task in the ordinary course of his employment with the railroad. Hence, the train's stopping would usually only be treated as a "circumstance" upon which plaintiff acted, and the railroad would not be liable. But, the FELA and the Boiler Inspection Act in many cases place liability where it would otherwise not attach and, in the opinion of the trial court, plaintiff marshalled sufficient evidence thereunder to reach the jury. Therefore, the threshold question is whether the verdict in favor of the railroad was manifestly contrary to the weight of the evidence so that the trial court abused its discretion in denying plaintiff's motion for a new trial.

In pertinent part the Boiler Inspection Act provides:

> "*It shall be unlawful* for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put...." [Emphasis added.]

Although the Boiler Inspection Act does not expressly provide a remedy for employees injured as a result of a

defective locomotive,[3] the preamble to the act indicates
that the act is for the protection of "employees and trav-
elers upon railroads." Hence, the act provides an "abso-
lute and continuing duty"[4] which, being in pari materia
with the FELA, is enforceable thereunder by employees
injured as a result of a violation of the Boiler Inspection
Act.[5]

In the instant case there is virtually no controversy
that plaintiff established through circumstantial evidence
that the train stopped because of a malfunction of the
locomotive, albeit an insubstantial malfunction, which
activated the ground relays. It is also not disputed that
the malfunction constituted a violation of the absolute
duty imposed under the Boiler Inspection Act. The only
truly disputed issue involves whether the train's stopping
was a cause of plaintiff's injuries.

The relevant, and liberally devised, causation stand-
ards appear under Section 51 of the FELA: "Every com-
mon carrier by railroad . . . shall be liable in damages to
any person suffering injury while he is employed by such
carrier in such commerce, . . . for such injury or death
*resulting in whole or in part* from the negligence of any
of the officers, agents, or employees of such carrier, or by
reason of any defect or insufficiency, due to its negligence,
in its cars, engines, appliances, machinery, track, road-
bed, works, boats, wharves or other equipment." [Em-
phasis added.]

Although, generally speaking, comparative negligence
prevails under the FELA, a special rule obtains under

3.  *Urie v. Thompson*, 337 U.S. 163 (1949).

4.  See, e.g., *Lilly v. Grand Trunk W.R.R.*, 317 U.S. 481, 485
(1943); *Southern Ry. v. Lunsford*, 297 U.S. 398, 401 (1936);
*Baltimore & Ohio R.R. Co. v. Groeger*, 266 U.S. 521, 523-524
(1925). See also McCoid, The Federal Railroad Safety Acts and
the FELA: A Comparison, 17 Ohio St. L.J. 494 (1956).

5.  Corco, How FELA Became Liability Without Fault, 15
Cleve. Marsh. L. Rev. 344 (1966).

Section 53 which requires that contributory negligence be disregarded when injuries result from the railroad's failure to comply with statutes enacted for the protection of railroad employees. Hence, in the instant case, if we should determine that the railroad's violation of the Boiler Inspection Act played even the slightest part in plaintiff's injuries, a full recovery, including damages for pain and suffering, would most likely be required.

While it is undoubtedly true that "the history of the Federal Employers' Liability Act since [1943] has been one of gradual but persistent liberalization in the direction of allowing the plaintiff to recover whenever he is injured in the course of his employment, as under a compensation act,"[6] it has been often stated that the FELA is nevertheless not a compensation statute and does not make employers insurers of the safety of their employees.[7] Thus, the employer will not be liable under the FELA unless its negligence played some part in the employee's injuries.

The landmark case under the FELA is *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500 (1957), *rehearing denied* 352 U.S. 521, 353 U.S. 943. Speaking in terms of when the plaintiff has made out a case for the jury, the Court therein stated: "Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S. at 506. Thus, in situations where there is the "color" of negligence which is only involved in some "infinitesimal degree" with the employee's injuries, the courts must accept the verdict rendered for the plaintiff.[8] "Courts are not free to

---

6. W. Prosser, The Law of Torts 536 (4th ed. 1971).

7. See, e.g., Note, 42 Miss. L.J. 418 (1971); Lewis, Federal Employers' Liability Act, 14 S.C.L.Q. 447 (1962).

8. Corso, note 5, supra.

reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 115 (1963).

The instant case, however, does not admit of material factual controversies. The only question is one of law—the question of whether the train's stopping was causally related to plaintiff's injuries. Even under the liberal causation provisions of the FELA, we find it was not.

Years ago, in the case of *Davis v. Wolfe*, 263 U.S. 239, 243 (1923), the Supreme Court held that the test of FELA liability required more than simple, "but for" causation. In so doing the Court wrote that "an employee cannot recover . . . if the failure to comply with [FELA] requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury. . . ." See also *Phillips v. Pennsylvania R.R. Co.*, 283 F. 381 (7th Cir. 1922), *cert. denied* 260 U.S. 731 (1922). However, the broadly stated principles of causation as appear in the *Rogers* Case cast some doubt on the continuing validity of *Davis v. Wolfe.* Of course, the *Rogers* Case cast doubt upon the vitality of any negligence standard under the FELA which was stated in terms of proximate cause. Nevertheless, the case law since *Rogers* demonstrates that courts may find as a matter of law that a railroad is not liable for its negligence when that negligence did not appreciably increase the risk of harm from which the employee's injury resulted, i.e., the railroad's negligence was merely a circumstance or condition upon which the employee acted. Thus, in *Mensen v. Baltimore & Ohio R.R. Co.*, 250 N.E.2d 303 (Ill. 1969), *cert. denied* 397 U.S. 980, the plaintiff was injured when an oversized truck tire he was changing struck the fender of the truck, thereby knocking the truck off the jack. On several previous oc-

casions the plaintiff had complained about the size of the tires and their frequent flats. In upholding a judgment for the railroad, the court therein stated at page 405: "In a philosophic sense the existence of the flat tire may have played a part in producing plaintiff's injury in that had it not occurred, there might have been no occasion for changing the tire. What occurred here, however, could as well have happened while plaintiff was mounting a new tire furnished in compliance with his request, or in a routine rotation or replacement of tires." Similarly, in *Simpson v. Texas & New Orleans R.R. Co.*, 297 F.2d 660 (5th Cir. 1962), relief was denied to a railroad mail carrier, for failure of proof of causation, who was struck by a car while unboarding a bus in the course of his employment. His theory was that if his company-supplied motorcycle had been properly maintained by the railroad, he would not have been riding the bus; and, if he had not been riding the bus, he would not have been injured. Relief was also denied in *Nicholson v. Erie R.R. Co.*, 253 F.2d 939 (2d Cir. 1958) to a female plaintiff who was injured by a passenger while returning from the female passengers' lavatory. Her argument was that she would not have been injured had the railroad properly provided a lavatory for female employees.

In light of the foregoing cases, we are persuaded that on the facts of the instant case the jury below was entitled to return a verdict for the railroad. Especially in light of the fact that one of plaintiff's expected tasks was to assist in the restarting of stalled locomotives, we find that the jury properly disregarded plaintiff's tenuous theory of causation and disallowed his recovery. The court therefore properly refused plaintiff's motion for a new trial based upon the sufficiency of the evidence.

Plaintiff next contends that the court erred in overruling his timely trial objection to defendant's cross-examination of him concerning previous disciplinary proceedings by the railroad against him. In support of this con-

tention plaintiff refers us to *Levant v. Leonard Wasserman Co., Inc.*, 445 Pa. 380, 382-83 (1971), where our Supreme Court reiterated that " 'the commission of the act charged cannot be proved by showing a like act to have been committed by the same person. . . . Where there is neither connection nor relation between prior acts of negligence and subsequent conduct, evidence of the former is not relevant to prove the latter to be negligence.' *Jamison v. Ardes*, 408 Pa. 188, 182 A.2d 497 (1962), *Commonwealth v. Etzel*, 370 Pa. 253, 86 A.2d 64 (1952), *Wyatt v. Russell*, 308 Pa. 366, 162 A. 256 (1932)." That case is not on point, however. In the instant case the circumstances of prior disciplinary proceedings against plaintiff were not called to the jury's attention, but only that plaintiff had in fact been disciplined. This cross-examination was brief (barely two pages of trial transcript) and was offered to counter-balance plaintiff's testimony on direct examination which tended to show that plaintiff was an exemplary employee who received promotions to positions of greater responsibility. Plaintiff having chosen to testify as to his record of employment, he cannot now complain that defendant cross-examined him briefly concerning his less noteworthy achievements. The court, therefore, did not abuse its discretion in permitting this inquiry. See McCormick, Law of Evidence 47 (1954).

Lastly, appellant maintains that the lower court violated the best evidence rule when it admitted a typewritten copy of a handwritten inspection report of the gondola car from which plaintiff fell. The copy, which qualified as evidence over a hearsay objection under the Business Records as Evidence Act,[9] indicated that no grease or oil had accumulated on the grab bars or stirrups of the gondola car.[10] Plaintiff has not pressed this alter-

---

9. Act of May 4, 1939, P.L. 42, 28 P.S. § 91(b).

10. At trial appellant's other allegation of negligence was that appellant slipped because the grab bar and stirrup were oily,

nate theory of the railroad's liability in this appeal; and, on the question of liability under the Boiler Inspection Act, the copy of the report had no bearing. Hence, with respect to the only theory of liability now before us, any error in admitting the copy was harmless. We note in passing, however, that the so-called best evidence rule is ordinarily only literally applicable to the proof of the contents of documents when the contents of the documents are material to, as contrasted with mere evidence of, the issues at bar. *Perry v. Ryback*, 302 Pa. 559, 568 (1931). See also Brown, Pennsylvania Evidence 204 (1949). Beyond that, the evidentiary ruling of the trial court allowing "secondary evidence" should not be reversed except for a grave abuse of discretion, which we do not think occurred herein. McCormick, Law of Evidence 412-13 (1954).

For all the foregoing reasons, the judgment is affirmed.

JACOBS, J., concurs in the result.

SPAETH, J., did not participate in the consideration or decision of this case.

---

so that the railroad failed to provide him with a safe place to work. To prove this contention he offered photographs of greasy grab bars and stirrups. It was subsequently demonstrated that the photographs were those of a different car taken on a different day.