463 A.2d 1183

**COMMONWEALTH of Pennsylvania**

v.

**George Charles REICHERTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 28, 1982.

Filed Aug. 5, 1983.

---

258

Richard R. Fink, Levittown, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and CIRILLO, JJ.

WICKERSHAM, Judge:

This is an appeal from a judgment of sentence of the Court of Common Pleas of Philadelphia County on convictions of carrying firearms on public streets or public property in Philadelphia and firearms not to be carried without a license (18 Pa.C.S. §§ 6108, 6106). We affirm. The pertinent facts are as follows.

On December 18, 1979, appellant George Reicherter was detained by Philadelphia police officers as he was riding, in a friend's truck, away from his residence immediately before a search of the residence by federal and city authorities was to begin. Reicherter was frisked at that time by a Philadelphia detective and a Colt pistol was found on his person. Reicherter was charged with firearms violations; he subsequently moved to suppress the pistol, which motion was denied. Reicherter was tried in Municipal Court and found guilty of carrying firearms on public streets or public property in Philadelphia and of firearms not to be carried without a license and fined $200 plus $50 costs. An appeal and trial de novo in the Philadelphia County Court of Common Pleas followed with the same verdicts and sentence. Post-verdict motions were filed and denied. This appeal followed.

Appellant Reicherter frames the first two issues involved as follows:

Did the Commonwealth fail to articulate a justification for the stopping and frisking of the appellant for weapons which led to the discovery of the Colt revolver?

Did the Commonwealth's possession of a search warrant for the appellant's residence justify his arrest and the search incident to that arrest which yielded the Colt revolver?

Brief for Appellant at 2.

■ Reicherter argues that the police had no probable cause to stop and search him and that the seized weapon must, therefore, be suppressed.

The Supreme Court recently held in *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), that when police officers executing a valid search warrant encountered the owner of the premises to be searched descending the front steps outside the premises, they were justified in requiring him to re-enter the house for the duration of the search. As the Supreme Court stated: "Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705, 101 S.Ct. at 2595 (footnotes omitted).

The Supreme Court reasoned as follows:

Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself. Indeed, we may safely assume that most citizens—unless they intend

flight to avoid arrest—would elect to remain in order to observe the search of their possessions. Furthermore, the type of detention imposed here is not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention.

Moreover, because the detention in this case was in respondent's own residence, it could add only minimally to the public stigma associated with the search itself and would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station.

452 U.S. 701–02, 101 S.Ct. at 2593–94 (footnotes omitted).

Reicherter's situation does not differ significantly from the situation discussed by the Supreme Court above. Although Reicherter was initially stopped by the police while several blocks from his apartment while the defendant in *Michigan v. Summers, supra,* was stopped on the front steps of his residence, this is not a difference such as would require a different result: in both cases some transportation of relatively short duration was required to return the defendant to the residence to be searched.

The frisk of Reicherter's person, in the course of which the handgun that led to the instantly considered charges was discovered, was also properly conducted. Detective Chishlsom, the officer who frisked Reicherter, was aware that Reicherter's residence was to be searched for narcotics and had previously observed Reicherter in possession of a shotgun. The Supreme Court held in *Michigan v. Summers, supra,* "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence.... The risk of harm to both the police and the occupants is minimized if the officers exercise unquestioned command of the situation." 452 U.S. at 702–03. Based on the circumstances present here, the police had a reasonable belief that Reicherter was armed and their frisk of him was fully justified. In any event, as Reicherter was arrested at the time he was placed in the police car for

return to his residence (*Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982)), and as the arrest was proper, the search is justified as incident to lawful arrest. *Commonwealth v. Long*, 489 Pa. 369, 414 A.2d 113 (1980).

Appellant Reicherter phrases his next question involved as follows:

Did the court err in allowing, over objection, the Commonwealth to prove the contents of the search warrant by the testimony of a witness, rather than by the document itself?

Brief for Appellant at 2.

■ During the suppression hearing, the lower court allowed Detective Chishlsom to testify that the search warrant for Reicherter's home permitted a search for narcotics and weapons. Reicherter objects that the best evidence rule is applicable here and that the warrant itself, and not mere testimony about it, should be the exclusive evidence of its contents.

Detective Chishlsom, however, referred to the existence of the search warrant only to detail his justification for frisking Reicherter. "Probable cause for a warrantless arrest must be determined on the basis of the knowledge of the arresting officer at the time of the arrest." *Commonwealth v. Riley*, 284 Pa.Super. 280, 286, 425 A.2d 813, 816 (1981). The actual contents of the warrant are not the key issue here; instead it is Detective Chishlsom's knowledge at the time of arrest that is important. We note that "the evidentiary ruling of the trial court allowing 'secondary evidence' should not be reversed except for a grave abuse of discretion" (*Ledford v. Pittsburgh and Lake Erie Railroad*, 236 Pa.Super. 65, 75, 345 A.2d 218, 224 (1975)). We find no such grave abuse here.

Reicherter states his final issue as:

Did the municipal court err in failing to grant the defendant's petition for a de novo suppression hearing?

Brief for Appellant at 2.

■ Reicherter argues that he should have been granted a second suppression hearing because he had not been

provided with a copy of the search warrant before the hearing and was unable to point out that, contrary to Detective Chishlsom's belief, the warrant did not mention any weapons to be searched for at Reicherter's residence. Reicherter maintains that this fact would "have shown that the search warrant did not provide any justification for the arrest and frisk of the appellant." Brief for Appellant at 17.

We find more than enough justification for the frisk of Reicherter quite apart from the police officer's mistaken belief that the search warrant described weapons to be seized and, therefore, reject this argument.

Judgment of sentence affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

The majority extends the principle of *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), to hold that the police may transport someone several blocks to his home and require him to remain there while they execute a warrant to search the home for contraband. Slip op. at 1184 – 1185. I think this extension both unwarranted and unnecessary. It is sufficient for our decision to apply the principle that the police may arrest someone without a warrant if they have probable cause to believe that he has committed a felony.

In *Summers*, the police obtained a valid warrant to search the defendant's home for contraband. When the police arrived, the defendant came out of the house and began to descend the front steps, but the police detained him and continued to detain him, along with seven other occupants, while they conducted the search. The Supreme Court assumed that the detention was not supported by probable cause to arrest the defendant but held that it was nonetheless justified under the fourth amendment because: (1) it minimized the risk of harm to the officers; (2) it provided a safeguard against concealment or destruction of

the contraband; (3) it facilitated an orderly completion of the search; (4) against the background of the search of his home, it represented a minimal additional intrusion on the defendant's personal liberty; and (5) the search warrant provided an objective basis for concluding that someone in the home, although not necessarily any particular occupant, had committed a crime. None of these factors justifies the deprivation of an occupant's liberty when he is several blocks away from his home. It is obvious that an absent occupant is far less likely to engage in sudden violence or to conceal evidence during a search than an occupant who is on the premises while they are being searched, for the absent occupant may not return to the premises during the course of the search. Moreover, the degree of intrusion involved in detaining an occupant and transporting him back to his home is considerably greater than that involved in detaining an occupant who is already on the premises to be searched. *See Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied sub nom. Pennsylvania v. Lovette,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). I therefore do not agree with the majority's conclusion that the police were justified in stopping appellant under *Summers.*

Apparently as an alternative to its extension of *Summers,* the majority holds that "the police had a reasonable belief that [appellant] was armed and their frisk of him was fully justified." Slip op. at 260. I do not agree with this conclusion either. It is true that a police officer may stop and frisk a person if he reasonably suspects "that criminal activity may be afoot and that the person[ ] with whom he is dealing may be armed and presently dangerous ...." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). *See generally Commonwealth v. Wasiuta,* 280 Pa.Super. 256, 421 A.2d 710 (1980) (collecting cases). But the record here does not suggest that the officers were aware of any unusual circumstances from which they could have inferred that criminal activity was "afoot."

I nonetheless concur in the majority's decision to affirm the judgment of sentence. A police officer who has probable cause to believe that a suspect has committed a felony may arrest the suspect without a warrant. *Commonwealth v. Westerfer*, 294 Pa.Super. 459, 440 A.2d 556 (1982); *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 336 A.2d 632 (1975), *cert. denied sub nom. Donnelly v. Pennsylvania*, 424 U.S. 974, 96 S.Ct. 1477, 47 L.Ed.2d 744 (1976). Probable cause to make a warrantless arrest may be predicated upon the tip of an anonymous informant if the arresting officer "know[s] the underlying circumstances from which the informer concluded that the suspect participated in the crime and ha[s] some reasonable basis for concluding that the informant is reliable," *Commonwealth v. Jenkins*, 288 Pa.Super. 232, 237, 431 A.2d 1023, 1025 (1981) (citing *Commonwealth v. Stokes*, 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Patterson*, 266 Pa.Super. 167, 403 A.2d 596 (1979)). Here, the affidavit in support of the application for the search warrant was based on the tips of three anonymous informants, as well as on the observations of local and federal drug enforcement authorities [1] and the owner of Quaker City Chemical Co. I am satisfied that the police could reasonably conclude that the informants were reliable, and, further, that the information provided by the informants gave the police probable cause to arrest appellant without a warrant.

In determining whether the tip of an anonymous informant is reliable, we must look to four factors: "(1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other source? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip?" *Commonwealth v. Ambers*, 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973) (citation omitted). *See also Commonwealth v. Mazzochetti*, 299 Pa.Super. 447, 455, 445 A.2d 1214, 1218 (1982). Here, the reliability of the

---

1. Both local and federal police were involved in arresting and searching appellant. N.T. at 15 (Suppression Hearing)

anonymous informants was established in part by the fact that they had previously provided the police with reliable information about criminal activity: The first informant had arranged for drug enforcement authorities to make two purchases of methamphetamine during the preceding six months; the second had arranged for the authorities to make one purchase of methamphetamine during the preceding month; the third had given information to the police that had led to four arrests and convictions for burglary. In addition, the information provided by the informants was corroborated, both by each other's stories and by the observations of local and federal police. Finally, the information provided by the third informant was a declaration against his penal interest.

The reliability of the informants upon whose tips the warrant was predicated was therefore amply demonstrated, and the question becomes whether the information they provided gave the police probable cause to arrest appellant.

The affidavit is replete with details about the underlying circumstances from which the informants and local and federal police concluded that appellant was engaging in the manufacture and delivery of methamphetamine. The first informant had frequently observed appellant distributing methamphetamine between January and August, 1979. During the summer of 1979, the informant had observed "test tubes, bottles, bunsen burners, hot plates, bottles of chemicals, a micro-wave oven with a gray substance in it and an infra-red light with a gray substance under its beam" in appellant's residence, "all of which he believed to be the components of a methamphetamine laboratory." Affidavit in Support of Application for Search Warrant at 1–2. The second informant knew appellant personally and said that appellant had been making gray and purple "speed" for several years and selling it in exchange for cash and stolen goods. The second informant also said that he had observed methamphetamine drying at appellant's residence and that, on December 6, 1979, he purchased an ounce of methamphetamine at appellant's home, where he smelled a

strong odor that he associated with methamphetamine. Drug enforcement agents witnessed the purchase. The third informant said that appellant had been receiving stolen property during October 1979 at his residence. From October 25, 1979, through December 18, 1979, Philadelphia police officers observed people whom they believed to be burglars [2] delivering packages to appellant and his wife. The third informant also said that he had bought methamphetamine from appellant on four occasions in exchange for stolen goods. On November 2, 1979, the police observed appellant purchase a 55 gallon drum of isopropal alcohol, which the affiant asserted was used in the manufacture of methamphetamine, from Quaker City Chemical Co., where he identified himself as "Jose Pratty," and return with it to his home. The owner of Quaker City Chemical Co. said that on eleven previous occasions, "Josep Pratty" had purchased chemicals from his store, including "hydrochloric acid, reagent, acetone and methyl alcohol methanol." Drug enforcement officials said that these chemicals are used in the manufacture of methamphetamine. On November 8, November 30, December 7, and December 15, 1979, Philadelphia police found filter papers in appellant's trash. The papers were analyzed in a laboratory and found to contain methamphetamine residue.

On the basis of these facts the police had probable cause to believe that appellant was engaged in the manufacture and delivery of methamphetamine.[3] Since the manufacture,

2. Because the affidavit does not set forth the basis for the officers' belief that the people who delivered packages to appellant and his wife were burglars, I do not view the assertion that these people were known burglars as adding any weight to the allegations set forth in the affidavit.

3. Of course, this does not mean that every valid search warrant to search a home for narcotics is predicated upon probable cause to believe that every occupant of the home is engaged in illegal drug activities. See Michigan v. Summers, supra (Although search warrant was based on probable cause to believe that someone who occupied residence had violated narcotics laws, Court would not infer that police had probable cause to believe that defendant, who was one of eight occupants found on the premises, had violated such laws). Id. 452 U.S. at 693, n. 1, 696, 703, 101 S.Ct. at 2589, n. 1, 2590, 2594.

delivery, and possession with intent to manufacture or deliver methamphetamine is a felony, 35 P.S. § 780–113(a)(30) & (f)(1.1) (1977), the police could arrest appellant without a warrant, *Commonwealth v. Westerfer, supra; Commonwealth v. Donnelley, supra,* and search him incident to that arrest. *Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113 (1980).