## Commonwealth v. Lawrence

*Jerry J. Russo, assistant district attorney,* for the commonwealth.

*Thomas A. Thornton,* for defendant.

DOWLING, *J.,* February 20, 1990 — What are the parameters within which a valid search warrant permits the police to investigate a suspect and his property, when the specific focus of the search is outside the precise limits of the warrant?

The facts are comparatively simple. Defendant was stopped while driving away from his residence, one mile from his home, by agents of the Bureau of Alcohol, Tobacco and Firearms of the U.S. Treasury Department, who were executing a valid warrant for the search of the defendant's residence, issued by a federal magistrate. The warrant authorized a search for firearms, ammunition, and other related accessories, as well as the documentation relating to their purchase or possession.

When defendant stepped from his car in response to the agents' request, he was patted down for weapons, and was found to be carrying a large folding knife in a leather holster. Upon detection of a round object in defendant's left front pocket, the agents requested that he produce it for inspection. The accounts vary as to exactly what happened next, but no one disputes that the object, a film container which was later found to contain methamphetamine, went flying into the adjoining bushes. (Defendant claims it "went flying" when one of the agents pulled his hand out of his pocket; the agents claim defendant threw it away, prior to striking one of them in the face.) Lawrence was then placed under arrest for unlawful possession of a controlled substance.

The only material issue is whether the search and

seizure was lawful and properly conducted. The question of whether defendant has standing to challenge the search and seizure — a matter which the commonwealth has seen fit to brief for the court's review — is, in this instance, moot, since, even if that question is answered in the light most favorable to defendant — affirmatively — it will avail defendant little if we find that there is nothing about the proceedings which will yield to such a challenge. In addition, we can easily dispose of the issue of the "abandonment" of the film container which was found to contain methamphetamine. If defendant's account of how the film container happened to fly into the adjoining foliage is accurate, the container was, in essence, dropped by accident; and it staggers the imagination to suggest that an article otherwise within the penumbra of a valid search can be taken out of it by an accidental dropping. If, on the other hand, the account of the agents is accurate, and the container was tossed deliberately away, we concur with the commonwealth's reliance on *Commonwealth v. Rodriquez*, 385 Pa. Super. 1, 559 A.2d 947 (1989), which holds that where evidence is abandoned, the defendant is deprived of his expectation of privacy in its contents.

For the reasons set forth below, we find that the search and seizure of defendant was consonant with the standards currently set forth in both case and statutory law, and that it was therefore proper and lawful.

We are unpersuaded by virtually every facet of defendant's reasoning in this matter. The argument that the agents "had complete control of the property through sheer numbers," and were therefore unjustified in searching defendant, ignores a basic element of a search for weapons: namely, that firepower gives a single individual a destructive

capability which bears no relationship to his numerical inferiority. Nor does defendant's statement that "it defies the imagination to come up with a weapon that looks like a round film canister" strike any responsive chords in this court's heart. If this were the year 1890 instead of 1990, defendant would be on solid ground. But, living as we do in an era when a single individual can blow up an entire commercial airliner over a Scottish village, with a sickening loss of life on both air and ground, using a weapon so small and light that it can pass for a portable tape recorder, we consider that to require law enforcement officers to decide on sight what a container could or could not possibly hold is to demand that they have powers of divination. We will not insist upon any such unrealistic standard by which to judge the conduct of agents engaged in the otherwise above-board discharge of their duties.

Much more central to the instant case, however, is the issue of the propriety of the search and seizure occurring at a distance from the defendant's residence. We can see no other interpretation that can be drawn from the existing case law than to agree that a warrant authorizing the search of a residence also justifies a search of the occupant under certain defined conditions.

The premier case cited by the commonwealth, *Commonwealth v. Reicherter*, 317 Pa. Super. 256, 463 A.2d 1183 (1983), stands for the proposition that:

"The frisk of [the defendant's] person, in the course of which the handgun that led to the instantly considered charges was discovered, was also properly conducted. Detective Chishlsom, the officer who frisked Reicherter, was aware that Reicherter's residence was to be searched for narcotics and had previously observed Reicherter in possession of a shotgun. The Supreme Court held in *Michigan v.*

*Summers, supra,* 'the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence. . . . *The risk of harm to both the police and the occupants is minimized if the officers exercise unquestioned command of the situation.*' 452 U.S. at 702-3. Based on the circumstances present here, the police had a reasonable belief that Reicherter was armed and their frisk of him was fully justified. In any event, as Reicherter was arrested at the time he was placed in the police car for return to his residence (*Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982)) and as the arrest was proper, *the search is justified as incident to lawful arrest. Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113 (1980)." *Id.* at 260-1, 463 A.2d at 1185. (emphasis supplied)

As to the distance of the defendant from his home at the time of the search, we share the view of the *Reicherter* court when it stated: "Although Reicherter was initially stopped by the police while several blocks from his apartment while the defendant in *Michigan v. Summers, supra,* was stopped on the front steps of his residence, this is not a difference such as would require a different result: in both cases some transportation of relatively short duration was required to return the defendant to the residence to be searched." *Id.* at 260, 463 A.2d 1185. A distance of one mile certainly qualifies as a distance which can be covered by "transportation of relatively short duration." This is especially pertinent when one recalls that defendant was asked by the agents to "go back and search" for his firearms at his residence.

Defendant has been unable to cite any case authority contrary to the commonwealth's base of precedent; indeed, the cases cited by defendant, by his own admission, uphold the "limited right to detain" the occupant of premises that are to be

searched. The only arguments to be made are, essentially, subjective ones as to what constitutes the precise limits of this "limited right"; and, as we have stated above, we feel that this case falls securely within these limits.

Accordingly, we enter the following

## ORDER

And now, February 20, 1990, defendant's post-trial motions are denied, and the district attorney is directed to present him for sentencing.