718 A.2d 746

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Mary GRAZIANO–CONSTANTINO, Appellant.**

Supreme Court of Pennsylvania.

Argued April 29, 1998.

Decided Aug. 27, 1998.

John I. McMahon, West Conshohocken, for Mary Graziano–Constantino

Michael D. Marino, Dist. Atty., Mary MacNeil Killinger, Asst. Dist. Atty., Patricia E. Coonahan, Norristown, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

The sole issue in this case is whether the warrantless stop by police of a car operated by suspects in a drug investigation was supported by probable cause.

The facts underlying this issue are as follows. In October of 1992 Hatboro police were informed by a confidential informant that one Richard Martin was selling methamphetamine, a controlled substance. As a result of their investigation, police determined that Anthony Constantino was probably the source of Martin's supply, and as a result, they obtained a search warrant for 16 South Chester Avenue, Constantino's residence. The warrant authorized a search for contraband, paraphernalia and drug records within the Constantino's home, its outbuildings and curtilage and any vehicle or person at the premises.

Shortly before police arrived to execute the warrant, Anthony and Mary Constantino left their home, driving a pickup truck. Police who were assigned to keep the residence under surveillance followed them. Other police who were assigned to execute the search warrant had not yet arrived to conduct the search of the premises. Approximately two and a half miles from the Constantino's home, the truck stopped at a stop sign. At that point, police exited their vehicle and approached the truck with guns drawn, one officer on each side of the truck. The officer on the passenger side opened the door and told the passenger, Mary Constantino, that he possessed a search warrant for her home and believed she was transporting methamphetamine. Ms. Constantino stated: "the dope is in my purse." Ms. Constantino was then arrested and taken back to her home. The search at the Constantino residence, conducted pursuant to the warrant, disclosed various drug-related items, including 73.41 grams of methamphetamine. At that point, Mr. Constantino was also arrested.

The Constantinos were both convicted of fourteen counts of various drug charges and each was sentenced to seven to twenty years imprisonment. Timely appeals were taken and

although several issues were raised before the Superior Court, at issue on this appeal is only whether it was error for the trial court to fail to suppress evidence seized as a result of the stop of the truck.

The trial court determined that at the time of the stop of the truck, Mary Constanino was not under arrest. Further, it held that no questions were asked of her, and that police "merely approached the vehicle to inform the occupants that their house was being searched pursuant to a search warrant." The trial court also determined that Mary Constanino volunteered the statement about drugs in her purse, and that based on this statement, the officer had probable cause to search the purse.

On appeal, the Superior Court held that in assessing the lawfulness of the intrusion into the Constantinos' liberty when the truck was stopped, a major consideration was that a valid search warrant for the couple's home had been issued. Since the affidavit in support of the warrant established that the couple were probably involved in drug activity, it was proper to detain them and transport them back to the house where the search was being conducted. The court based this conclusion on *Commonwealth v. Reicherter*, 317 Pa.Super. 256, 463 A.2d 1183 (1983), where Reicherter was detained as he was riding in a friend's truck away from his residence immediately before a search of his residence was begun. Authorities possessed a search warrant for Reicherter's home. He was stopped several blocks from his residence and a pistol was found after he was searched. Superior Court upheld both the stop and frisk of Reicherter citing *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Summers* the Supreme Court held that where officers executed a valid search warrant for a home and encountered its owner leaving the building to be searched, they were justified in requiring him to reenter the building for the duration of the search. The Superior Court also held that Mary Constantino consented to the search of her purse, thus eliminating the need for probable cause. According to the Superior Court, police did

not request a search and, notwithstanding the police use of drawn firearms, there was no coercion.

We granted allocatur to consider, as indicated earlier, whether Constantino's vehicle was illegally stopped and whether Mary Constantino was illegally seized in violation of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, thereby requiring suppression of all evidence seized arising from the search of Constantino's purse.

In *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996), this court considered a similar case. In *Melendez,* police were in the process of applying for a search warrant for the home of Melendez based on their belief that she and a companion were involved in illegal drug-related activity. Before the warrant was issued but while police had the property under surveillance, Melendez got in an automobile and drove away. Police followed Melendez and stopped her. They removed her from the car, searched her purse, where they found cash, a gun, and purported drug materials, and transported her back to her house, where they used her keys to gain entrance. They then held Melendez and another occupant of the house for approximately an hour until the warrant arrived. Melendez was stopped and searched, in essence, because she was a suspect in a felony investigation. We held that the stop and the search was impermissible under Article I, Section 8 of the Pennsylvania Constitution.

In *Melendez,* police observed no criminal activity on the part of Melendez as she entered or operated her car. In this case also, there is nothing of record to indicate that police observed any criminal activity as the Constantino's entered or operated their pickup truck. The Constantinos, then, like Melendez, were stopped because they were suspects in a felony investigation.[1]

1. Incredibly, both lower courts determined that the Constantinos were stopped so that the police might inform them that a warrant had been issued to search their home. Even if this were true, we have looked in vain for precedent authorizing armed traffic stops to inform citizens that they are being investigated by the police.

The only distinction between the *Melendez* case and this case is that in this case the warrant had already been issued at the time of the stop, whereas in *Melendez* it had not. In both cases, however, the authority to stop, if such authority existed, must emanate from either the search warrant, from probable cause to believe the suspects were engaged in criminal activity, or from a limited seizure based on the suspicion that criminal activity is afoot.

■ The warrant provides no authority for the vehicle stop pursuant to its own terms, for it relates to the premises and things and persons found upon the premises. The stop was made two and a half miles from the premises.

■ With respect to authority for warrantless seizures, we stated in *Melendez*:

In sum, there are two circumstances in which warrantless seizures of a person are constitutionally permissible. The first is where police have probable cause to believe that a crime is being or is about to be committed. The second is that a limited seizure may be effected where there is a reasonable police belief that criminal activity is afoot. *[Com. v.] Hicks*, 434 Pa. [153] at 160, 253 A.2d [276] at 279 [(1969)], interpreting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

544 Pa. at 328, 676 A.2d at 228. We have already stated that there was no probable cause to believe that a crime was being committed at the time the truck was stopped, and there is nothing of record to cause police to believe that criminal activity in the truck was afoot. There was, therefore, under Article I, Section 8 of the Constitution of Pennsylvania, no lawful basis for the stop of the truck pursuant to the search warrant, which was issued for the premises, or pursuant to the common law exceptions to the warrant requirement.

Since police had no authority to stop the Constantino vehicle, the admission of Mary Constantino that she had drugs in her purse provided no basis for the subsequent search of the purse, and the fruits of that search, therefore, must be suppressed. Since the methamphetamine found in Mary Con-

stantino's purse directly linked her to the larger quantity of methamphetamine found in the house, and her conviction may have been based in part on this improperly admitted evidence, the judgment of sentence is reversed and the case is remanded for a new trial.

Reversed and remanded.

ZAPPALA, J., concurs in the result.

NEWMAN, J., files a dissenting opinion which is joined by CASTILLE, J.

NEWMAN, Justice, dissenting.

Because I believe that the police lawfully stopped the vehicle and detained its occupants, I dissent from the majority's conclusion that the drugs obtained from Ms. Constantino's purse must be suppressed.

The majority disregards a significant fact in determining that this case is indistinguishable from this Court's decision in *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996): the existence of a valid search warrant authorizing a search of the vehicle for contraband. In *Melendez,* the police stopped the defendant, searched her vehicle, and transported her back to her home where she and her codefendant were detained while the police waited for the arrival of a warrant to search the premises. Here, the police already had a valid search warrant that authorized the search for contraband of Ms. Constantino's residence and, most notably, all vehicles located on the premises. Unlike in *Melendez,* a neutral magistrate had determined that there was probable cause that the vehicle in which Ms. Constantino was traveling contained contraband, and issued the search warrant that the police were about to execute. The question in this case, therefore, is whether the stop of the vehicle some distance from the premises where the search of that vehicle was authorized by the warrant was unlawful.

I believe there are two grounds that support the legality of the stop of the Constantinos' vehicle. First, the police had

probable cause to believe that the Constantinos were transporting drugs when they drove the vehicle off the premises about to be searched. We have defined "probable cause" as "occurring where the facts and circumstances within the officer's knowledge and of which he has trustworthy information are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Melendez*, 544 Pa. at 328, 676 A.2d at 228, n. 4 (citing *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)). The warrant authorized the search for contraband of the vehicles at the residence, and therefore represented an independent magistrate's determination that there was probable cause that the vehicle contained contraband.[1] By driving this vehicle away from the residence, which the police had under surveillance, the Constantinos gave the police probable cause to believe that they were transporting contraband.

Further, the stop and detention of the Constantinos for the purpose of returning them to their residence while the police searched it comports with the Fourth Amendment pursuant to the United States Supreme Court's decision in *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Summers*, the Court upheld the detention of a suspect who was leaving his house as the police were about to execute a search warrant for narcotics. The police detained the individual and forced him to return to the residence while they conducted the search. The defendant challenged this initial detention, claiming that the police lacked probable cause to arrest him at that point. The Court held that, even assuming that there was no probable cause to arrest the defendant, the detention was nevertheless justified because: (1) the intrusion on the defendant's liberty was minimal compared to the substantial invasion of the defendant's privacy already autho-

1. The majority downplays the fact that the warrant authorized the search of the vehicles located on the premises. Regardless of whether the warrant covered a search of the vehicle once it was removed from the premises, the determination by the magistrate that there was probable cause that the vehicle contained contraband surely gives the police reason to believe that the persons removing the vehicle from the scene were presently engaged in the illegal transportation of that contraband.

rized by the issuance of a search warrant of his residence; (2) the detention is not likely to be abused as an improper means of gathering additional information not already available from the search; (3) the presence of the occupants during the search may facilitate an orderly completion of the search; and, (4) there is a legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. *Id.* at 701–03, 101 S.Ct. 2587. The following passage best underscores the Court's rationale in *Summers* :

> We have already noted that the detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant. The existence of a search warrant, however, also provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. . . . The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.

*Id.* at 703–04, 101 S.Ct. 2587.

Here, the police decision to pursue the Constantinos and to stop their vehicle so that they could detain them during the search of their home was justified by the same considerations as the detention in *Summers*. The police had an independent magistrate's determination that there was probable cause that the vehicle in which the Constantinos were driving contained contraband. There is, moreover, no question that the vehicle could have been searched pursuant to the warrant if it had remained at the Constantinos residence during the search, or that, if the police had executed the search warrant while the Constantinos were at home, the amount of drugs found on the premises would have given them probable cause to arrest Ms. Constantino and to search her purse incident to her arrest. In effect, the only significant factor that distinguishes this case from *Summers* is the distance between the house and the defendants at the time of their respective seizures. That distance, however, does not amount to a constitutionally-

significant difference. *See U.S. v. Cochran,* 939 F.2d 337, 339 (6th Cir.1991) (*Summers* does not impose upon police a duty based on geographic proximity).

We have not previously held that Article I, Section 8 of the Pennsylvania Constitution prohibits police from detaining an individual while executing a search warrant of that individual's residence, as happened in *Summers.* This Court was quite careful, in *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992), to distinguish *Summers.* In *Rodriquez,* the police officer entered an apartment building without a warrant and detained three women who were sitting on the front steps of the building. We noted two significant differences between *Summers* and the facts of *Rodriquez* : (1) the absence of a probable cause determination by a neutral and detached magistrate; and (2) the lack of a connection between the suspected criminal activity in the targeted residence and the persons actually detained. *Id.* at 68, 614 A.2d at 1380–81. We concluded that *Summers* did not apply, and went on to hold that the seizure in question violated the defendant's rights under Article I, Section 8 of the Pennsylvania Constitution. We did not, however, expressly state that seizures permissible under the Fourth Amendment pursuant to *Summers* would violate a defendant's Pennsylvania constitutional rights. Nor did we address the question of the constitutionality under the Pennsylvania Constitution of *Summers* detentions in *Melendez*; rightfully so, because there was no warrant in *Melendez.* There is, therefore, no previous decision from this Court that prohibits *Summers* detentions under the Pennsylvania Constitution, and, furthermore, no reason for this Court not to apply *Summers* to this case.

In conclusion, I would affirm the Superior Court and permit the introduction of the evidence obtained subsequent to the stop of the Constantinos' vehicle.[2]

CASTILLE, J., joins in this dissent.

---

**2.** If the stop of the Constantinos' vehicle were lawful, Ms. Constantino's subsequent admission that "the dope is in my purse" undoubtedly gave

the officer probable cause to arrest her for possession of a controlled substance, and to search her purse incident to arrest.