J-S45034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAMON RESHEA RAMOS | : | |
| | : | |
| Appellant | : | No. 15 MDA 2018 |

Appeal from the Judgment of Sentence November 28, 2017
in the Court of Common Pleas of Lancaster County
Criminal Division at No.:  CP-36-CR-0002252-2015

BEFORE:   PANELLA, J., OTT, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                     **FILED SEPTEMBER 20, 2018**

Appellant, Damon Reshea Ramos, appeals from the judgment of sentence imposed after his conviction of possession with intent to deliver a controlled substance (PWID), possession of drug paraphernalia, receiving stolen property, and possession of a firearm prohibited.[1]  Specifically, he challenges the denial of his motion to suppress.  We affirm.

We take the relevant facts from the trial court's March 20, 2018 opinion.

> On April 8, 2015, members of the Lancaster County Drug Task Force were preparing to execute a search warrant on 817 East Marion Street in Lancaster City.  (***See*** N.T. Hearing, 12/20/16, at 4-6).  The warrant was obtained pursuant to numerous purchases of drugs from [Appellant's] residence, the above-mentioned address, and his automobile, a white Cadillac, by a confidential informant.  (***See id.*** at 5-6).  Although the search

_____

[1] ***See*** 35 P.S. §§ 780-113(a)(30) and (32), and 18 Pa.C.S.A. §§ 3925(a) and 6105(a)(1), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

warrant listed [Appellant] as the occupant of the house to be searched and the subject of the criminal investigation, the warrant did not list [him] as a person to be searched or his vehicle as a place to be searched. (*See id.* at 22-23). To ensure that [Appellant] was present in the home at the time the warrant was executed, [Lancaster County Drug Task Force Detective Todd Grager] was directed to conduct surveillance at the residence. (*See id.* at 7). [Detective Grager] testified that, although it was not necessary, they wanted to have [Appellant] present at the execution of the warrant so that he did not have to be located if contraband was found in the home. (*See id.* at 36).

While conducting surveillance of [Appellant's] residence, the officer observed [him] leave his house and get into his vehicle a [half-block] away. (*See id.* at 9, 25, 36-37). Although the officer did not observe any suspicious or criminal activity of [Appellant] as he neared his vehicle, officers approached [him] for the purpose of detaining him.[2] (*See id.* at 29, 37, 46). Upon reaching [Appellant], the officers placed their cars right next to and directly in front of [his] Cadillac. (*See id.* at 46-47). Because of the placement of the officers' vehicles, [Appellant] was unable to leave the scene and was ultimately detained.

After detaining [Appellant], the officers demanded that [he] show his hands. (*See id.* at 38). Upon reaching the Cadillac, the officers observed marijuana in the front pocket of [Appellant's] sweatshirt. (*See id.* at 10). The officers then opened the door of the Cadillac and assisted [Appellant] out of the vehicle. (*See id.*) Once [Appellant] had exited his vehicle, the officers placed him under arrest[, performed a search incident to arrest,] and seized the aforementioned marijuana, United States currency, and an additional [three and one-half] grams of marijuana [located on his person]. (*See id.* at 52).

Following [Appellant's] arrest, the officers focused their attention to the execution of the search warrant. With [Appellant] in attendance, the officers returned to 817 East Marion Street and began to search the residence. (*See id.* at 14). There, the

---

[2] The Commonwealth concedes that Appellant was detained in his vehicle. (*See* Commonwealth's Brief, at 6).

officers read [Appellant] his **Miranda**[3] rights. (**See id.** at 14). [Appellant] was then asked if he had anything in the house, to which he responded that he had "weed, money and a gun" within a locked safe located in his bedroom. (**Id.** at 15). The officers immediately escorted [Appellant] upstairs into his bedroom where [he opened the safe for them]. (**See id.**). When the safe was opened, the officers seized the aforesaid contraband.[4] (**See id.**).

(Trial Court Opinion, 3/20/18, at unnumbered pages 2-3) (footnote omitted; record citation formatting provided).

The Commonwealth filed an information against Appellant on June 9, 2015, charging him with the foregoing crimes. On August 26, 2015, Appellant filed a motion to suppress the evidence seized from his person, which the court denied on March 10, 2017, after a hearing. On September 19, 2017, at the conclusion of his waiver trial, the trial court convicted Appellant of all four charges. On November 28, 2017, the court sentenced him to an aggregate term of not less than five nor more than ten years' incarceration. Appellant timely appealed.[5]

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] The firearm located in the safe had been reported stolen to the Manheim Borough Police Department. (**See** Police Criminal Complaint, 4/08/15, at 2, 5).

[5] Appellant filed a timely concise statement of errors complained of on appeal on January 19, 2018, pursuant to the trial court's order. **See** Pa.R.A.P. 1925(b). The court filed an opinion on March 20, 2018. **See** Pa.R.A.P. 1925(a).

Appellant raises one question for this Court's review: "[Whether] the trial court err[ed] in denying [Appellant's] motion to suppress where the police did not have reasonable suspicion to stop and detain [him] on April 8, 2015, in violation of the Fourth and Fourteenth Amendments of the federal constitution and Article I, Section 8 of the Pennsylvania Constitution?" (Appellant's Brief, at 4) (some capitalization omitted).

Our standard of review of this matter is well-settled:

> Our standard of review on appeal of the denial of a motion to suppress is to determine whether the certified record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. We consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If the record supports the factual findings of the suppression court, we reverse only if there is an error in the legal conclusions drawn from those factual findings.

**Commonwealth v. Gould**, 187 A.3d 927, 934 (Pa. Super. 2018) (citations and quotation marks omitted).

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. To effectuate these protections, the exclusionary rule bars the use of illegally obtained evidence in state prosecutions in order to deter illegal searches and seizures." **Commonwealth v. McCleary**, ___ A.3d ___, 2018 WL 3375265, at *2 (Pa. Super. filed July 10, 2018) (citations omitted).

Here, Appellant argues that the trial court should have suppressed the contraband seized from his person where "[his] initial detention . . . within his

vehicle was unlawful because the [o]fficers did not have the requisite probable cause and/or reasonable suspicion to seize him prior to serving the search warrant on the residence." (Appellant's Brief, at 11). We disagree.

> The three levels of interaction between citizens and police are: mere encounter, investigative detention, and custodial detention.
>
> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion[,] it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

**Commonwealth v. Edwards**, \_\_\_ A.3d \_\_\_, 2018 WL 3910695, at \*\*3-4 (Pa. Super. filed Aug. 16, 2018) (citation omitted).

In **Michigan v. Summers**, 452 U.S. 692 (1981), the police were getting ready to execute a search warrant for narcotics at a residence, when they observed Summers, the named subject of the search warrant, on the front steps, leaving the residence. **See Summers**, **supra** at 693. The officers detained Summers, searched him, and brought him into the house while they served the search warrant. **See id.** Summers moved to suppress heroin

found on his person, the trial court granted the motion, and the Michigan Court of Appeals and the Michigan Supreme Court affirmed. *See id.* In reversing the Michigan Supreme Court, the United States Supreme Court held that "for Fourth Amendment purposes, . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705 (footnotes omitted). The Supreme Court reasoned:

> Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself. Indeed, we may safely assume that most citizens—unless they intend flight to avoid arrest— would elect to remain in order to observe the search of their possessions. Furthermore, the type of detention imposed here is not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention. Moreover, because the detention in this case was in respondent's own residence, it could add only minimally to the public stigma associated with the search itself and would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station. . . .
>
> In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the articulable facts supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record,

the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation. Finally, the orderly completion of the search may be facilitated if the occupants of the premises are present. Their self-interest may induce them to open locked doors or locked containers to avoid the use of force that is not only damaging to property but may also delay the completion of the task at hand.

*Id.* at 701-03 (quotation marks, citations, and footnotes omitted).

In *Commonwealth v. Reicherter*, 463 A.2d 1183 (Pa. Super. 1983), police encountered Reicherter in a vehicle several blocks from his residence when they were on the way to his home to conduct a search. *See Reicherter*, *supra* at 1184. The police detained and frisked him, and discovered an illegal handgun on his person. *See id.* A panel of this Court concluded, based on *Summers*, that Reicherter's detention, and the subsequent seizure of evidence in his possession, was lawful. *See id.* at 1185.

Here, the police had a search warrant to search Appellant's home for contraband. Appellant was the named occupant of the residence to be searched, and was the subject of the investigation. Detective Grager, who was conducting surveillance immediately before the execution of the search warrant to ensure that Appellant, the subject of the investigation, was present, observed him leave his front porch and get into a vehicle. Police detained him as he sat in the car, a very short time after leaving his house, and he accompanied them into his home, where he identified, and provided access to, the locked contraband.

- 7 -

Based on **Summers** and **Reicherter**, we conclude that the police were authorized to detain Appellant while his residence was searched. **See Summers**, **supra** at 705; **Reicherter**, **supra** at 1185. Therefore, because the record supports the factual findings of the trial court and it properly applied the law, it did not err in denying Appellant's motion to suppress.[6] **See Gould**, **supra** at 934. Appellant's issue lacks merit.

---

[6] We also agree with the trial court's observation that:

> [Appellant's] reliance on **Commonwealth v. Graziano-Constantino**, 718 A.2d 746 (Pa. 1998), **Commonwealth v. Eichelberger**, 508 A.2d 589 (Pa. Super. 1986)[, *appeal denied*, 531 A.2d 427 (Pa. 1987)], **Commonwealth v. Luddy**, 422 A.2d 601 (Pa. Super. 1980)[, *cert denied*, 454 U.S. 825 (1981)] and **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1996)[,] is misplaced. [(**See** Appellant's Brief, at 12-13)]. The facts here are distinguishable from the detention in **Graziano-Constantino**, as the detention there occurred two and a half miles away from the premises to be searched. [**See Graziano-Constantino**, **supra** at 747.] In **Eichelberger**, police performed a [] search [of] the defendant after he was detained pursuant to a search warrant and found drugs. The Court invalidated the search, concluding that the police could not articulate facts to infer that the defendant was armed and dangerous. [**See**] **Eichelberger**, [**supra**] at 592. Most importantly, [however,] there was no analysis of whether the initial detention was valid under the **Summers** rationale. The same is true for **Luddy**, where the Court invalidated the search of a defendant found outside the home during the execution of the warrant. [**See Luddy**, **supra** at 550.] Lastly, no warrant had been issued prior to the defendant's arrest in **Melendez**. [**See Melendez**, **supra** at 227.] None of these cases specifically address[es] the facts of this case and for that reason, the [c]ourt determines that they are unpersuasive in resolving this issue. . . .

(Trial Ct. Op., 3/10/17, at unnumbered pages 5-6).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2018